CHANNIE GRAY, Appellant, v. COLUMBIA TERMINALS COMPANY, a Corporation, and RAYMOND GRIMM.—52 S. W. (2d) 809.

Division One, September 3, 1932.

74

*N. Murry Edwards* and *Robert A. Harris* for appellant.

*Thompson, Mitchell, Thompson & Young* for respondents.

FERGUSON, C.—The plaintiff, widow of John Gray, deceased, brought this action under the wrongful death statutes, for damages, in the sum of ten thousand dollars, for the death of her husband who was run over and killed by a motor truck or tractor owned and operated by defendant, Columbia Terminals Company, a corporation, and driven by its employee, defendant Grimm. Plaintiff made several separate assignments of negligence in her petition but, abandoning all other charges of negligence, submitted her case solely on negligence under the humanitarian rule. Defendants' answers are general denials with pleas of contributory negligence. The verdict of the jury was for defendants and from the judgment entered thereon for defendants plaintiff prosecutes this appeal.

The assignments of error presented here by appellant, plaintiff below, relate to instructions numbered, 3, 4 and 5 given at the request

of the defendants. Respondents make no attempt to sustain these instructions or to refute appellant's criticisms thereof but say, that appellant rested her case solely upon negligence under the humanitarian doctrine; that the "evidence did not make out a case to which the humanitarian doctrine would apply" and its demurrer to the evidence at the close of the whole case should have been sustained; that appellant was not, from any point of view, entitled to recover and the judgment was therefore for the right party and "error of the trial court in its instructions" is immaterial.

Assuming the instructions complained of to be erroneous, nevertheless, if, as respondents contend, no substantial evidence tending to show defendants to have been guilty of negligence under the humanitarian rule is to be found in the record, respondents' position is well taken. In considering the evidence for the purpose of determining the trial court's ruling upon the demurrer to the evidence we have applied the rule that upon a final demurrer to the evidence the whole evidence, whether offered by plaintiff or defendants, must be searched and the plaintiff given the benefit of any and all facts and circumstances favorable to or tending to support her theory of the case and every reasonable inference deducible therefrom while evidence on the part of and favorable to the defendants, which is contradicted, must be excluded. In this case the evidence offered by the defendants, in some particulars, seems to aid plaintiff's case. From a reading of the record, with the rule above stated in mind, we have gleaned the following facts.

The deceased Gray, a colored man, forty-eight years of age, was employed by the Missouri Pacific Railroad Company at its freight house at 7th and Poplar Streets in the city of St. Louis. Seventh Street is a north and south street, sixty feet in width. Two street car tracks are located in about the center of the street, the east track being the northbound track and the west track the southbound track. The distance from the east rail of the east track to the west rail of the west track is fifteen feet, so that the street car tracks, including the space between, occupy fifteen feet in the center of the street. Each track is four and one-half feet wide and the space between the tracks is six feet. It is twenty-two and one-half feet from the east rail of the east track to the east curb line and the same distance from the west rail of the west track to the west curb line. The freight house where Gray was employed is on the west side of 7th Street. At about noon on January 14, 1928, Gray, preparatory to eating his lunch which he carried daily from his home to his place of work, crossed to the east side of 7th Street to get a bucket of coffee. Some ten minutes later as he was returning to the freight house crossing from the east to the west side of the street carry-

ing the bucket of coffee and as he reached a point about thirty-five feet from the east curb and within twenty-five feet of the west curb, being at least five feet past the center line of the street, he was struck by defendant company's tractor which was pulling a freight van or trailer and was being driven south by defendant Grimm. Gray was hurled to the street and the rear wheel of the tractor ran over him causing fatal injuries resulting in his death about half an hour later.

Defendant Grimm, the driver, describes this tractor and trailer as follows: "The tractor has four wheels; it is nothing more than the chassis and contains the motor; the trailer carries the freight and when the tractor is hooked to the load the front wheels of the trailer go up so you have six wheels on the pavement." The cab of the tractor, where the driver sat and where his helper was also riding, was not enclosed but open so that a clear and unobstructed view ahead and to either side was afforded the driver. The tractor was about five feet wide and "the distance between the front wheels of the tractor is six inches to a foot wider than the street car tracks." Grimm further testified that he never drove the tractor more than six of seven miles an hour. The steering wheel was on the right side of the tractor and necessarily the driver sat at the right side of the cab. A helper named Kelly was seated at the left side of the cab. About eighty feet north of the point where Gray was struck 7th Street crosses railroad tracks and shortly before Gray started back to the freight house and across to the west side of the street the gates at the railroad crossing had been lowered as a train passed over the crossing. The southbound tractor and trailer with other southbound traffic was held, by the gates, on the north side of the railroad tracks and a line of northbound traffic formed along the east side of the street south of the railroad tracks. When the gates were raised the other southbound automobiles moved rapidly around, past and away from the slow moving tractor and the single line of northbound traffic along the east side of the street moved north. As the tractor moved south there were no vehicles parked on the west side of the street or traveling south west of the tractor and between the course it was pursuing and the west side of the street. From the time it started south at the railroad tracks until it struck Gray, the tractor was traveling six or seven miles an hour along a straight course "straddling" the west rail of the west or southbound track. This left an open and clear space of twenty feet or more to the right or west of the course traveled. Appellant offered evidence that at the speed at which the tractor was traveling it could have been stopped with safety within a distance of six or eight feet. Gray stepped from the sidewalk on the east side of the street and passed through the single line of northbound traffic. Emerging from the

78

northbound traffic he walked toward the west side of the street but continuously looked toward the south where some northbound automobiles were traveling slightly to the west of the line of northbound traffic through which he had just passed. Walking at an ordinary gait he continued toward the west side of the street looking however to the south and, while still looking southward, walked in front of the southbound tractor and was struck and knocked down by the left front wheel of the tractor. At no time did Gray glance northward or toward the northwest. All the witnesses, who saw the accident, say that as Gray proceeded toward the west side of the street he was "looking" or "watching" toward the south. One of plaintiff's witnesses testified that as Gray crossed the inside rail of the east or northbound street car track walking at the same gait and looking south, which would have placed him about eight feet east from the point where he was struck, the tractor was yet thirty-five or forty feet north of that point. Respondents say that this witness did not specify to which track he referred when he stated that as Gray crossed the inside rail of the street car track the tractor was thirty-five or forty feet north. We think the testimony is susceptible of the interpretation we have given it. But if respondents choose to construe it as referring to the inside rail of the west or southbound street car track, it would substantially strengthen plaintiff's case and tend to refute the contention made by respondents which we will later discuss. The helper Kelly, defendant's employee, who was riding in the seat with the driver, testified that he first saw Gray coming west across the street when he emerged from the single line of traffic on the east side of the street about fifteen feet west of the east curb. Gray would then have been about twenty feet from and east of the point where he was struck. Kelly further testified that no vehicles came between Gray and the tractor as Gray came west across the street and that he (Kelly) watched Gray from the time he first saw him coming across the street until he fell under the tractor, but did not warn the driver of the impending danger. Kelly also stated that Gray continued to look to the south from the time he first saw him until he was struck by the tractor and that "the fastest we went was six or seven miles an hour." The tractor did not at any time swerve, turn or vary from its course "straddling" the west rail of the west track though there was, as we have noted, a clear and open street space of at least twenty feet to the west, nor was any warning signal or horn sounded. No attempt was made to stop the tractor until it struck Gray and it was then stopped within ten feet.

██ ██ The foregoing facts are taken from the evidence most favorable to appellant to the benefit of which, as we have said, plaintiff is entitled in passing upon the demurrer to the evidence. In

this connection it is unnecessary to set out the evidence tending to support defendants' version of the accident. It is sufficient to say that the evidence introduced on the part of the defendants tended to show that Gray "ran" or "dashed" from the line of traffic on the east side of the street and continued running toward the west side of the street but looking south and ran into or collided with the tractor, striking it just back of the cab. In view of the facts and circumstances most favorable to plaintiff's theory of the case, with the reasonable inferences deducible therefrom considered, we think an issue for the jury under the humanitarian doctrine was made and that respondents' demurrer to the evidence was well ruled. Whether the driver of the tractor in the exercise of that degree of care required of an operator of a motor vehicle upon a public street could have seen and discovered Gray in, or about to enter into, a position of peril in time to have thereafter, by the use of the means at hand, stopped or swerved the tractor, slackened its speed or sounded a warning and thus have averted striking him, was, upon the facts adduced, a question for the jury. As he crossed the street Gray was at all times within plain view of the driver, had the driver been alert and watchful. Gray walked at an ordinary and uniform gait from the east side of the street toward the west side. It must have been apparent that he was intent upon crossing the street and all the witnesses who saw the accident agree that Gray continuously looked or "watched" toward the south as he walked west and until he was struck by the tractor. A jury could well have found that when Gray was within three feet of the center of the street and within eight feet of the path of the truck which was then thirty-five or forty feet to the north, it was apparent from his actions and appearance as he continued walking west at the same gait and looking to the south that he was intent upon pursuing a course which would bring him with three steps into the path of the tractor and that he was wholly oblivious to the approach of the tractor and further that had the driver exercised proper care in keeping a lookout ahead he could have discovered Gray's perilous situation in time to have stopped the tractor which, traveling, as it was, at six or seven miles an hour, could have been stopped in six to eight feet and thereby have avoided striking Gray; or that had he sounded a warning Gray's attention would have been attracted in time for him to have halted short of the path of the tractor; or the jury might well have found that had the driver exercised proper care he could have discovered Gray's perilous situation in time to have swerved or turned the tractor to the right and thus have avoided striking Gray. "The humanitarian doctrine calls into action every means at hand to prevent the threatened injury, and this may be accomplished by giving

80

an alarm or slackening the speed as well as by stopping. [Todd v. St. L.-S. F. Ry. Co., 37 S. W. (2d) 557.]

When, in the exercise of proper care, the driver should have seen Gray and discovered his perilous position and what he could have thereafter timely done to avert striking him were questions for the jury under the circumstances shown by the evidence. Respondents' argument is resolved to the proposition that Gray was not in a position of peril, until he crossed the exact, mathematical center line of the street and that the humanitarian rule did not require the driver to give heed to the situation indicated by Gray's conduct and appearance and take any precautionary action or make any effort to avert striking him until Gray had passed to the west of the center line of the street. We do not consider respondents' position tenable. As we have noted the evidence shows that Gray's course, manner, conduct and appearance indicated that he was intent upon crossing to the west side of the street and that he was wholly oblivious of the approach of the tractor and that situation exised as he crossed the inside rail of the east track at which time he was within one step or three feet of the center line of the street and within less than three steps of the path of the tractor while it was yet thirty-five or forty feet to the north. A jury would have been warranted in finding that he was at that instant in, or entering into, a position of imminent peril which the driver of the tractor saw or in the exercise of proper care should have seen, and that with the means at hand the driver could thereafter have either stopped the tractor, slackened its speed, sounded a warning and (or) swerved the truck to the right and thereby averted striking Gray. If the respondents, as we have heretofore mentioned, choose to construe the witness' reference to the inside rail of the track to refer to the west track, then Gray would, at the time, have been directly in the path of the tractor as "straddling" the west rail of that track it traveled the distance of thirty-five or forty feet south to the point where he was struck.

■ Holding, as we do, that the evidence required the submission of the case to the jury under the humanitarian rule it becomes necessary for us to determine appellant's complaint that the trial court erred in giving instructions numbered, 3, 4 and 5 at the request of the defendants. Learned counsel for respondents make no attempt to justify the giving of these instructions, but rely for affirmance of the judgment solely upon their contention, against which we have ruled, that their demurrer to the evidence should have been sustained and that error in the instructions is immaterial. While this position taken by respondents might perhaps be construed as a confession of error in the instructions (Schroeder v. Wells, 310 Mo. 642, 276 S. W. 60) we shall nevertheless examine the instructions and pass upon appellant's claim of error therein.

Appellant's instructions predicated recovery by plaintiff upon a finding by the jury that "Gray was in a place of imminent peril and danger of being struck and injured by said tractor," and that the driver of the tractor "either saw or by the exercise of ordinary care could have seen," Gray's "peril and danger of being struck by said tractor . . . in time thereafter by the exercise of ordinary care and with the means at hand and with safety to the occupants of said tractor . . . to have checked the speed, stopped said automobile tractor or sounded a warning and thereby have avoided striking Gray" but that he "negligently failed to check the speed or stop said tractor or sound a warning and as a direct consequence thereof Gray was struck and killed." Defendant's instrution No. 3 tells the jury their verdict should be for defendants if they find "that it was impossible for the driver . . . with the means and appliances at hand and with safety to himself and the occupants of his truck to have avoided striking the deceased by swerving the truck, stopping the truck or sounding a warning" after Gray came *"into the path"* of the tractor. In effect, the instruction tells the jury that a position of peril to which the humanitarian rule would become applicable did not exist until Gray was directly in front of and within the path of the tractor and that the driver was not required under the humanitarian rule to make any effort to avoid striking Gray until he came within the path of the truck regardless of the situation shown by the evidence as to Gray's apparent obliviousness at all times to the approach of the tractor as he continued an unchecked course toward and within a few steps of the path which the tractor was pursuing and while it was yet a sufficient distance north within which it could have been either stopped, the speed slackened or at least a timely warning sounded after it must have become evident to a reasonably prudent person that Gray was in a perilous position or was unknowingly entering into a position of peril and danger. The dictates of humanity imposed upon the driver the duty to take such action to avert striking Gray as the means at hand allowed as soon as he saw, or by the exercise of proper care could have seen, Gray's perilous situation and forbid him, in the face of the apparent peril into which Gray was heedlessly thrusting himself, to wait until Gray came directly in front of and into the path of the tractor before making any attempt to prevent striking him.

"Under the humanitarian rule, as we understand the reason and purpose of that rule, the driver of an automobile cannot supinely wait until the pedestrian takes the last step into the direct path of the automobile before acting to avoid injuring the pedestrian, but his duty to stop the automobile, or warn the pedestrian of impending danger. we think, arises upon the first appearance of such danger.

82

The humanitarian doctrine is rendered abortive and ineffectual if it does not require the driver of an automobile to take reasonable means to avoid injury until the pedestrian takes the last step into the direct path of the automobile, after which step it is humanly impossible for any action to be taken by the driver of the automobile to avert the injury. The established law in this State respecting the duty of the driver of an automobile does not limit the zone of imminent peril to such narrow confines." [Burke v. Pappas, 316 Mo. 1235, 1244, 293 S. W. 142, 146.]

For the reasons stated we think the giving of defendants' Instruction No. 3 was error.

■ Defendants' Instruction No. 4 tells the jury that if they find that Gray "undertook to cross" the street "from the east side to the west side at a point other than a street crossing ordinarily used by pedestrians, and that at said time said 7th Street was filled with vehicles north and southbound, and that, all things considered, a reasonably prudent man would not have undertaken to cross said street at said time and place, but that deceased did cross said street at said time and place and as a direct result thereof deceased was fatally injured . . . you should find for defendants unless you find for plaintiff under Instruction No. 1." Defendants' Instruction 5 was to the effect that if the jury found that Gray "negligently and carelessly" failed "to keep a constant lookout ahead for vehicles" and "to keep a watch ahead" as he crossed the street and as a direct result thereof he came in contact with the tractor, "you should find for defendants unless you find for plaintiff under Instruction No. 1." It is not claimed that these instructions submit that plaintiff's negligence was the sole cause of the collision. The defendants pleaded contributory negligence and by giving these instructions the trial court injected that issue into the determination of the case. The prior or antecedent negligence of neither plaintiff nor defendant enters into the humanitarian doctrine. That doctrine "blots out all that preceded, whether primary or contributory negligence, and measures defendant's liability solely on its ability and failure to avert the injury under the then existing circumstances." [Todd v. St. L. & S.-F. Ry. Co., supra.] The negligence of Gray in crossing the street at the time, place and in the manner in which he did, and placing himself in a position of peril does not bar plaintiff from invoking the application of the humanitarian rule to the situation which resulted. The sole issue in this case was defendants' liability under the humanitarian doctrine and we have held the evidence sufficient to require the submission of that question to the jury. The humanitarian doctrine is only applicable where the person injured is negligent and where a case is grounded and submitted, as is the instant

case, solely on the humanitarian doctrine, it is the well-established rule in this State that contributory negligence of the plaintiff is not a defense or bar to recovery by plaintiff. [Burke v. Pappas, supra; McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S. W. 157; Gould v. C., B. & Q. Ry. Co., 315 Mo. 713, 290 S. W. 135.]

However, it will be noted that defendants' instructions 4 and 5 tell the jury that if they find that deceased was fatally injured as a result of his negligent act in crossing the street at the time, place and manner in which he did, as therein hypothesized, the verdict should be for the defendants *unless you find for plaintiff under Instruction No. 1,*" which was plaintiff's instruction predicating defendants' liability solely upon negligence under the humanitarian rule. As worded the instructions do not directly make contributory negligence a defense barring recovery by plaintiff under the humanitarian rule but "even if it be said that these instructions . . . do not make contributory negligence an absolute defense in this action, they do inject the issue of contributory negligence, and require the jury to determine the issue. Any instruction which injects a totally foreign issue into a case is not only erroneous but dangerous and harmful. Contributory negligence is an issue wholly foreign to a case submitted purely under the humanitarian rule." [Schulz v. Smercina, 318 Mo. 486, 1 S. W. (2d) 113.] When plaintiff submitted her case to the jury "under the humanitarian rule alone all the other specifications of negligence contained in her petition passed out of the case and the defense of contributory negligence also passed out of the case; contributory negligence being no defense under the humanitarian rule," and while defendants' instructions 4 and 5 "did not present the defense of contributory negligence as a defense under the humanitarian rule they did inject into the case a foreign issue which the jury were required to determine in passing upon the real issue and were therefore confusing and misleading." [Silliman v. Munger, 329 Mo. 235, 44 S. W. (2d) 159, 162.]

The error in giving defendants' instructions 3, 4 and 5 requires that the judgment be reversed and the cause remanded. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court, All of the judges concur.