ETHEL KIRKHAM, Appellant, v. JENKINS MUSIC COMPANY, a Corporation, and I. R. LOOSEN.—104 S. W. (2d) 234.

Division Two, April 21, 1937.

*I. B. Smith* and *Burns & White* for appellant.

*Cooper, Neel, Kemp & Sutherland* and *Frank J. Rogers* for respondents.

WESTHUES, C.—Appellant, plaintiff below, filed this suit to recover $10,000 in damages, alleged to have been sustained when she was struck by a car driven by the respondent, I. R. Loosen, while he was in the employ of respondent Music Company. There was a verdict and judgment for defendants and plaintiff appealed.

The collision occurred on Walnut Street, near the south line of Twelfth Street in Kansas City, Missouri. Walnut Street is a north and south roadway, and Twelfth Street runs east and west. There was a double street car track on Walnut Street. Plaintiff's evidence disclosed that on the afternoon of July 6, 1932, she and her small nephew attempted to cross Walnut Street from east to west in the pedestrian way on the south side of Twelfth Street; that when she arrived in the safety zone, which was located east of the car tracks, the stop and go lights changed in favor of north and south traffic; that she stopped in the safety zone; that a street car traveling north stopped in front of her for the purpose of discharging passengers. Plaintiff testified she walked south in the safety zone to permit the passengers to alight and occupy the northern part of the safety zone and pedestrian way. Plaintiff stated that after the street car moved north and the passengers left she walked due north in the safety zone intending to turn west in the pedestrian way when the lights were in her favor; that she was watching the lights on the northeast corner of Twelfth and Walnut. Plaintiff further testified that as she was thus proceeding north in the safety zone she was struck by respondent's car, which was traveling north on Walnut Street; that she did not see the car approaching and that no warning was given.

Defendant Loosen testified to the following state of facts: That he was in a car traveling north on Walnut Street on an errand for the Music Company; that he saw plaintiff walking north in the safety zone; that he was traveling in the east car tracks immediately to the west of the zone; that he did not sound a warning or slacken his speed, which was about fifteen miles per hour, and when he reached a point within a few feet of plaintiff she suddenly turned and took a step to the west in the path of his car; that he immediately swerved to the west and stopped his car within a few feet, but that the fender of the car came in contact with plaintiff, knocking her to the pavement.' He testified that he at no time entered the safety zone and that plaintiff gave no warning or indication that she was going to move out of the safety zone. A number of witnesses testified for the defendants.

The case was submitted to the jury on the alleged primary negligence, relating to defendant's driving through the safety zone. In another instruction the case was submitted to the jury under the humanitarian doctrine in failing to warn or swerve the car after defendants saw that the plaintiff was in a position of peril.

The only assignment of error briefed for a reversal of the judgment pertains to the giving of the following instruction on defendant's behalf:

''The court instructs the jury that the defendant, Mr. Loosen, had a right to assume that the plaintiff would not step out of the safety zone, if you find that she did, into the path of his approaching automobile, if so, and if you find that she did step out of the safety zone then there was no duty upon defendant Loosen to sound a warning or slow down or stop his automobile or swerve same until it became apparent to him, by the exercise of the highest degree of care, that plaintiff intended to move from said safety zone and into the path of his approaching automobile, if you find that she did; and the court further instructs you that if you find that plaintiff stepped out of said safety zone and into the path of defendant Loosen's approaching automobile,. if so, in such close proximity to said automobile that the defendant Loosen could not, by the exercise of the highest degree of care, have avoided striking plaintiff, then your verdict will be for the defendants.''

In appellant's brief the instruction was assailed upon several grounds. One of these assignments, which has given us much concern, is appellant's contention that the instruction unduly limited the danger zone, in that it told the jury, as a matter of law, that the driver of the car had the right to assume that the plaintiff would not step out of the safety zone and that he owed plaintiff no duty until it became apparent to him, by the exercise of the highest degree of care, that plaintiff intended to move from said safety zone. The point of collision was about forty feet south of the pedestrian way. Plaintiff testified that she did not step out of the safety zone and did not intend doing so until she reached the pedestrian way and then only if the traffic signals were in her favor. There was no evidence introduced of any act on the part of plaintiff which would indicate that she intended to step out of the zone.

The humanitarian doctrine is not applicable unless plaintiff was in a position of peril. Now then if we assume, which we must do in discussing this particular point, that plaintiff was struck at a point outside of the safety zone, and that defendant was at all times driving his car west of the zone, when did the peril arise? If plaintiff had continued on her course due north in the zone, and defendant's car continued on its course due north, west of the safety zone, there would not have been a collision. Does it not necessarily follow then that the peril did not arise until the defendant could have discovered, by the exercise of the highest degree of care, that plaintiff intended to step out of the zone to the west? We think so, and the instruction is in harmony with this theory. Appellant has cited a number of cases in support of her contention that the peril arose before she took the step to the west into the path of the car.

Some of the cases cited are: Hart v. Weber, 53 S. W. (2d) 914; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; Martin v. Fehse et al., 331 Mo. 861, 55 S. W. (2d) 440, l. c. 441 (1, 2). In the latter case Division One of this court said:

"Under this instruction no duty whatsoever was imposed upon the driver of the automobile to take any action or do anything to avoid striking plaintiff until after she stepped 'directly into the path of the automobile or so close thereto' that he could not thereafter in the exercise of the highest degree of care have averted striking her, whereas the driver's duty under the humanitarian rule began when he saw, or by the exercise of the highest degree of care could have seen, plaintiff walking toward the path of the car, apparently oblivious of its approach."

It will be noted that the facts in each of the above cases disclosed a certainty of a collision if the injured party and the car or vehicle in question continued on their course. In other words, a collision was certain to follow unless one or the other party changed their course. For example, in Gray v. Terminals Co., the deceased was crossing a street from east to west, the defendant's truck was going south, if both continued on their way without changing their rate of speed, a collision between them was apparent and certain to occur. This court ruled, and correctly so, that the peril arose, and the driver of the truck was bound to take action, under the rules of the humanitarian doctrine, as soon as he could have discovered, by the exercise of the highest degree of care, that a collision was imminent. It was ruled that the peril arose before the deceased was directly in the path of the truck. The distinction is obvious. In the case now before us no collision would have occurred if both parties had continued to travel due north. Of course there existed the possibility that the plaintiff might change her course and go west. █ But under the humanitarian doctrine the word "peril" means certain peril, and not the bare possibility that a collision might result. [Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713, l. c. 714 (1, 2); State ex rel. v. Trimble, 300 Mo. 92, 253 S. W. 1014.] Considering the above authorities and the rules applicable to the humantiarian doctrine, we are of the opinion that the instruction did not unduly limit the danger zone. The instruction informed the jury that under the law the driver was not bound to act until it became apparent, by the exercise of the highest degree of care, that plaintiff intended to move from the safety zone. This is in harmony with the doctrine announced in the cases cited by appellant which we have discussed.

█ What we have said is pertinent only to the humanitarian doctrine and does not apply to primary negligence. In this case we need not decide the question of whether the evidence justified a finding that the driver of the car was guilty of negligence in pro-

ceeding north in so close proximity to the safety zone, without warning, while the zone was occupied by pedestrians. The primary negligence, relied upon by the plaintiff, was that the driver in violation of an ordinance drove through the safety zone. An instruction similar to the one under discussion, on the point in question, was approved in Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014, 1. c. 1023. This was a case under the humanitarian doctrine, and the instruction discussed informed the jury that the motorman had a right to assume that the vehicle would remain in a place of safety and outside of the danger zone and no duty arose on part of the motorman until it became apparent that such vehicle was going to enter a position of danger. In the case of Goodwin v. Eugas, 290 Mo. 673, 236 S. W. 50, 1. c. 53 (3, 4), cited by appellant, the court dealt with a case of primary negligence.

It is insisted, by appellant, that the instruction erroneously assumed that the path of defendant's approaching automobile was outside of, or to the left of the safety zone. In this we think appellant is correct. Plaintiff testified that she did not step outside of the zone. The driver of the car testified that he proceeded north immediately to the left or west of the zone. If plaintiff's evidence is true then she was struck while in the zone and, therefore, was in the path of the car. If the car was traveling north partly in the zone and partly outside of the zone it is possible that plaintiff was struck even though she did not step to the west. In other words, the instruction did not require the jury to find that the plaintiff would not have been struck by the car if she had not stepped outside of the safety zone. The instruction should have submitted to the jury the question of whether the defendant proceeded north wholly outside of the safety zone, and not assumed as a fact that it was necessary for plaintiff to step outside of the zone to get into the pathway of the car. The instruction should have been so worded as to require the jury to find, before authorizing a verdict for the defendant, that the act of the plaintiff in stepping out of the zone, if she did so, was the sole cause of the collision.

We have ruled that in a case submitted to a jury under the humanitarian doctrine a defendant, if he has introduced evidence to that effect, has the right to have an instruction submitting the question to the jury of whether the negligence of the plaintiff was the sole cause of the injury; and if the negligence of plaintiff was the sole cause of the injury the instruction may authorize a finding for the defendant. [Hough v. Chicago, R. I. & P. Ry. Co., 339 Mo. 1169, 100 S. W. (2d) 499; Parker v. St. Louis-San F. Ry. Co. (Mo.), 41 S. W. (2d) 386, 1. c. 388 (5); Borgstede v. Waldbauer (en banc), 337 Mo. 1205, 88 S. W. (2d) 373.] Such instructions should not assume disputed facts, or be so worded that a jury would be led to consider contributory negligence as a defense. [Doherty

918

v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, l. c. 746.] It is fundamental law that a disputed fact at issue in the trial may not be assumed in an instruction. This is especially true where the instruction directs a verdict as in this case. [64 C. J. 531, sec. 482; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, l. c. 563 (7), and authorities there cited.]

For the error pointed out the judgment is reversed and the cause remanded for trial. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.