**PEARMAN v. CRAIN et al.**

No. 13623.

Circuit Court of Appeals, Eighth Circuit.

Feb. 13, 1948.

Rehearing Denied March 8, 1948.

William L. Mason, Jr., of St. Louis, Mo. (Vincent M. Flynn and Norman C. Parker, both of St. Louis, Mo., on the brief), for appellant.

Wilton D. Chapman, of St. Louis, Mo. (John O. Hichew and John L. Harlan, both of St. Louis, Mo., and Karl Greenhaw, of Fayetteville, Ark., on the brief), for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Jack R. Pearman, a minor about 20 years of age, brought this action by his next friend in the State Court in Missouri to recover damages for personal injuries sustained by him in a collision between a Chevrolet car he was driving and a truck of defendants driven by their employee Glenn Paul Taylor and the federal jurisdiction vested on removal.

The defendants counterclaimed for heavy damage done to their truck in the collision and the jury trial resulted in a verdict for defendants on plaintiff's cause of action and for plaintiff on defendants' counterclaim. The plaintiff's appeal from the dismissal of his action is for our determination.

It appears that the collision occurred on Lindbergh Boulevard at its intersection with Ladue Road in St. Louis County. Lindbergh Boulevard there runs about north and south practically on a level, and is a three-lane highway paved with cement, thirty feet wide, and Ladue Road running east and west is paved twenty feet wide. The approaches to the intersection are expanded, Lindbergh having four ten-foot lanes through the intersection, and Ladue coming towards it from the east passes through a wide cut and the paving is widened to thirty feet for a short distance and then is further expanded by curved entrance leads into the Boulevard. There is a "Stop Ahead" sign and then a "Stop" sign with a blinker light about twenty feet above the roadway to control travelers on Ladue going west before they enter the intersection.

At about fifteen minutes after ten o'clock on the night of April 11, 1946, the plaintiff with three companions in the car (two young women and a young man) was driving west on Ladue Road and defendants' truck was going south on Lindbergh. According to plaintiff's version of the accident he was an experienced driver and

thoroughly familiar with the intersection and the heavy traffic on Lindbergh, and he brought his car to a stop at the stop line a few feet east of the Lindbergh traffic lane and looked both ways on Lindbergh, first towards the south where he saw no traffic, and then towards the north where he saw the lights of defendants' truck approaching on Lindbergh from that direction. It was "approximately 200 feet" away. He started his car forward in low gear and then advanced to second, attaining a speed of about ten miles an hour. The next time he looked to see the approaching truck the front end of his car was on the west edge of the third lane of the Lindbergh road and the truck was about 50 feet from him, coming at the rate of about 50 miles an hour. He pressed down on his accelerator and tried to get across. The truck did not swerve or check speed and plaintiff's car was struck "just back of the door, the car being a two-door coach." Plaintiff then became unconscious. The testimony of plaintiff's companions in the car tended to corroborate the plaintiff's account of the accident.

According to the testimony of defendants' driver Taylor, he was an experienced truck driver and familiar with the intersection and the "tractor and trailer" which he was driving was in perfect working order. It was lighted with head lights in front, three car lights on the top of the front, and top and bottom lights on each corner. He saw the sign on Lindbergh, "Slow to 40 Miles Per Hour," as he approached the intersection with Ladue and did not drive faster than 40 from that sign on. He was driving in the proper right-hand outside lane of the road. When he first saw plaintiff's automobile his truck was 40 or 50 feet north of the intersection and plaintiff's automobile coming out of Ladue was about three feet west of the west edge of Lindbergh going at least 40 or 50 miles an hour, "the car popped out just like that (snapping fingers)." The instant he saw it he applied all brakes as quickly as possible. He had regular tractor brakes and vacuum brakes on the trailer; the foot pedal on the tractor controls the tractor and trailer brakes and there is a hand control which controls only the trailer brakes. He said, "I applied both." The truck could not be stopped. "I checked my speed some but not very much." He could not observe any change of speed or direction in the course of the automobile and the front of the truck hit the right side of the car from the door back. The witness said that the impact of collision "tore the brake hose loose and released all my brakes. I didn't have no control." The truck was badly damaged and the extra driver who had been asleep in a bunk in the cab was caught in the wreckage, extricated with difficulty and taken to the hospital.

Qualified witnesses presented chart drawings, photographs, measurements and descriptions which pictured all relevant physical conditions at and about the scene of the accident in complete detail, and there was also testimony as to the activities of both the drivers prior to the accident. But there remained direct and irreconcilable conflict between the respective versions of the happening of the accident, and the court instructed the jury upon the law applicable in view of the evidence.

The four points argued for reversal here are that the court committed error in giving certain instructions to the jury over the objection and exception of the plaintiff, in that (1) it erroneously instructed the jury in such manner as would indicate that the driver of defendants' truck need not act when he saw or could have seen plaintiff's automobile in a position of imminent peril; (2) there was no substantial evidence to support the instruction to find for defendants on plaintiff's cause of action if plaintiff's conduct was the sole cause of the collision; (3) the instructions permitting a verdict for defendants erroneously narrowed the danger zone to the plaintiff; (4) the last chance of humanitarian instruction given in respect to the counterclaim was erroneous.

The first three complaints against the instructions are directed against certain declarations contained in the following part of the instructions given by the court:

"This case, gentlemen of the jury, is being submitted by both parties on what is known as the Humanitarian Doctrine. It is commonly known among the lawyers as

the 'last clear chance doctrine.' The Court instructs the jury that if you find and believe from the evidence that at the time and place in question, plaintiff Jack R. Pearman, became and was in a position of imminent peril and danger from collision between defendants' truck and an automobile driven by the plaintiff, and that defendants' driver saw, or by the exercise of the highest degree of care could have seen, said plaintiff in the aforesaid position of imminent peril and danger, if you so find, in time thereafter, in the use of the highest degree of care and with means at hand, and with safety to defendants' truck, driver and co-driver, and any others at the intersection, to have stopped said truck, if you so find, or to have sufficiently checked the speed thereof, if you so find, or to have changed the course thereof, if you so find, and by doing so could have prevented the collision described in evidence, if you so find, and that the defendants' driver failed to do so and was thereby negligent, if you so find, and that such negligence directly caused such collision, if you so find, and that said plaintiff was thereby injured, if you find he was injured, then you are instructed that your verdict should be in favor of the plaintiff, Jack R. Pearman, and against the defendants on plaintiff's cause of action and also against the defendants and in favor of plaintiff, Jack R. Pearman, on the defendants' counterclaim and this is the law and true under the circumstances and conditions above set forth, if you so find them, even though you should also find and believe from the evidence that any act or omission, if any, of the plaintiff, Jack Pearman, directly contributed to his getting into or being in the aforesaid position of peril and danger, if you find he was.

"Gentlemen, the definition of 'imminent peril' within the Humanitarian Rule must be certain, imminent and impending peril and not probability of danger or mere possibility of injury.

"The definition of the 'highest degree of care,' as used in these instructions is that degree of care which would ordinarily be expected of a very prudent person under like or similar circumstances. 'Negligence,' as used in these instructions, is the failure to use the highest degree of care or the failure to use that degree of care which would be expected of a very prudent person under like or similar circumstances.

"The Court further instructs the jury that there was no duty resting upon the operator of defendants' truck mentioned in evidence, to stop his truck, slacken the speed thereof or divert the course of same until he saw, or by the exercise of the highest degree of care could have seen, plaintiff's automobile, and that said automobile and the plaintiff were in a position of imminent peril.

"Therefore, if you find and believe from the evidence that the perilous position of the plaintiff, if you find he was in a perilous position, when seen by defendants' truck driver, or when by the exercise of the highest degree of care on his part could have been seen by him, was when the truck, which he was driving was so close to him that said truck could not be stopped, the speed thereof slackened or the course thereof diverted by the exercise of the highest degree of care in time to avoid striking plaintiff, then said plaintiff is not entitled to recover and your verdict must be for the defendant.

"The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence plaintiff failed to bring the automobile he was operating to a full and complete stop before proceeding westwardly, entering Lindbergh Boulevard at its intersection with Ladue Road and drove into and on said Lindbergh Boulevard at a high and dangerous rate of speed under the circumstances then existing, and that such conduct on his part, if he did so conduct himself, was the sole cause of the collision mentioned in evidence and plaintiff's injuries resulting therefrom and that said collision and said injuries were not due to or caused by any negligence on the part of the operator of defendants' truck in any of the particulars submitted to you in the other instructions herein, then the plaintiff cannot recover herein and your verdict must be for the defendants.

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plain-

tiff so operated his said automobile as to cause same to suddenly go from a position of safety on Ladue Road and on the east side of Lindbergh Boulevard and closely in front of defendants' truck; and you further find and believe from the evidence that the acts of plaintiff in so doing, if you so find, were the sole cause of whatever injuries, if any, the plaintiff sustained on said occasion, and said injuries were not due to any negligence on the part of the operator of defendants' truck in any of the particulars set out in other instructions herein, then in that case, plaintiff is not entitled to recover and you will find your verdict for the defendants.

"The Court instructs the jury regarding the charge that the collision between the automobile being driven by the plaintiff and the motor truck being driven by and on behalf of defendants resulted solely from the alleged negligence of the plaintiff and that such charge is known as a 'sole cause' instruction; and by the term 'sole cause' is meant acts or conduct which were the sole cause of the collision without any contributing negligence whatsoever on the part of the defendants as submitted in the first charge given you, which is to the effect that if the plaintiff became in a position of imminent peril and that the defendants' chauffeur saw, or by the exercise of the highest degree of care could have seen the plaintiff in such position in time thereafter to have stopped, slackened speed or swerved the course of the motor truck and thereby have avoided the collision, then the plaintiff is entitled to recover. Therefore, if you find that defendants were negligent as submitted in said charge and such negligence, if any, directly contributed in any degree whatever to cause this collision in question, then you cannot find the issue of sole cause in favor of the defendants and your finding on this issue must be in favor of the plaintiff."

(1) The argument of the first point is predicated on the following excerpt from the foregoing part of the instruction:

"There was no duty resting upon the operator of defendants' truck mentioned in evidence, to stop his truck, slacken the speed thereof or divert the course of same until he saw, or by the exercise of the highest degree of care would have seen, plaintiff's automobile, and that said automobile and the plaintiff were in a position of imminent peril."

■ The substance of the contention of appellant is that the court in the quoted words, left it to the driver of the truck to decide in his own mind if the fact of imminent peril to plaintiff existed, if the time thereof had come, and where the place thereof was located. But though the contention is earnestly urged, it appears to be without merit. The instructions of the court properly expounded the Missouri humanitarian last chance doctrine in connected declarations which correctly required the jury to find whether or not a situation of imminent peril arose, indicated that the duty of the defendants to act did not arise unless and until such situation of peril as found by the jury arose, and told the jury that defendants' truck driver need not have acted until he saw, or by the exercise of the highest degree of care could have seen the plaintiff in a perilous position, the existence of which the jury was required to find as a fact. Such instructions are in accord with the applicable Missouri law. Zickefoose v. Thompson, 347 Mo. 579, 148 S.W.2d 784; Williams v. Davis, Mo.App., 168 S.W.2d 483; Burrow v. Red Line Service, 343 Mo. 605, 122 S.W. 2d 919.

■ (2) Appellant's argument of the second point is directed to the following excerpt:

"If you find and believe from the evidence plaintiff failed to bring the automobile he was operating to a full and complete stop before proceeding westwardly, entering Lindbergh Boulevard at its intersection with Ladue Road and drove into and on said Lindbergh Boulevard at a high and dangerous rate of speed under the circumstances then existing, and that such conduct on his part, if he did so conduct himself, was the sole cause of the collision mentioned in evidence and plaintiff's injuries resulting therefrom and that said collision and said injuries were not due to or caused by any negligence on the part of the operator of defendants' truck in any of the particulars submitted to you in the

other instructions herein, then the plaintiff cannot recover herein and your verdict must be for the defendants."

Appellant contends that in this part of its instructions the court did not properly specify the circumstances to which it referred and that there was no substantial evidence to support the instruction.

The evidence given by the driver of the truck to the effect that the plaintiff's car popped out of Ladue Road onto Lindbergh at such a high rate of speed as to preclude any possibility that it had been at rest at the marked-off stopping point exactly shown in the evidence and that the car continued at the same speed to the point of collision, taken with his testimony that his truck was properly upon a course that could not be changed or stopped before collision, afforded substantial support for the instruction. It is in accord with Bashkow v. McBride, Mo.App., 177 S.W.2d 637, and Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461.

■ (3) Appellant assails the following:

"If you find and believe from the evidence that on the occasion mentioned in evidence plaintiff so operated his automobile as to cause same to suddenly go from a position of safety on Ladue Road and on the east side of Lindbergh Boulevard and closely in front of defendants' truck; and you further find and believe from the evidence that the acts of plaintiff in so doing, if you so find, were the sole cause of whatever injuries, if any, the plaintiff sustained on the occasion, and said injuries were not due to any negligence on the part of the operator of defendants' truck in any of the particulars set out in other instructions herein, then in that case plaintiff is not entitled to recover, and you will find your verdict for the defendants."

It is argued that this instruction could only be applicable to a case where there is a head-on collision between vehicles going in opposite directions on adjacent lanes with narrow passage space or to cases of collision presenting some like situations, and was prejudicially erroneous in this case of collision between vehicles going at right angles to each other in an intersection, because the effect is to improperly narrow the plaintiff's zone of imminent danger, where under the humanitarian rule plaintiff must be saved if he can be. The cases cited and relied on by appellant are Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Prater v. Rausch, 344 Mo. 888, 129 S.W.2d 910; Collins v. Beckmann, Mo.Sup., 79 S.W.2d 1052; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S.W.2d 809; Kirkham v. Jenkins Music Co., 340 Mo. 911, 104 S.W.2d 234.

The last three lend no support to the appellant's contention, but the first two, Prater v. Rausch, and Branson v. Abernathy Furniture Co., indicate that the instruction was applicable and appropriate here according to Missouri law. In Prater v. Rausch [344 Mo. 888, 129 S.W.2d 911], the collision occurred between vehicles proceeding at an angle towards each other and the instructions disapproved contained words to the effect (excluding the qualifying portions) that if the jury found that plaintiff's automobile "was driven immediately in the path of defendant's automobile" so as to make it impossible for the defendant to prevent collision, defendant should have the verdict. The court said that the word "immediately" as used, referred to space or distance but that "if the word suddenly (which refers to time) had been used (that is, 'was driven so suddenly toward the path of defendant's automobile and in so close proximity thereto') this part of this instruction would have been made to harmonize with the idea expressed in the first part thereof, so as to make a correct converse of plaintiff's humanitarian submission."

Although Branson v. Abernathy presented the case of a collision between cars going in opposite directions on the same highway, the theory of the plaintiff in the case was that the skidding of his car incident to running off the paving onto a muddy shoulder and getting back and driving on again with disturbed control, resulted in the existence of imminent peril to him from defendant's oncoming car over a distance of seventy or eighty feet, and his right to the benefit of the humanitarian rule upon his theory of the case was clearly recognized. But the court ap-

proved the sole cause instruction permitting the verdict for defendant substantially as given here over the same attacks against it that are urged here.

In this case reference to plaintiff's conduct as operating his automobile so as to cause same to suddenly go from a position of safety on the east side of the broad highway to closely in front of the truck on the west side is clearly descriptive of what he was shown by substantial evidence to have done.

It is therefore held that appellant has not shown that the trial court ruled contrary to Missouri law in giving the instructions of which appellant has complained in his first three points. The rulings were permissible under that law and this court may not grant reversal on account of them. Russell v. Turner, 8 Cir., 148 F.2d 562, loc. cit. 564.

(4) Under this fourth point appellant complains of the instruction given by the court in respect to defendants' counterclaim for damages to their truck. There was substantial evidence that such damage amounted to $3,266.91 and there is no contention that it was not a proper subject of counterclaim determinable by the jury on the same trial. Plaintiff originally included a claim for property damage as a second count of his petition. It was withdrawn and before the appeal was submitted here the defendants withdrew their appeal from the judgment against them on their counterclaim.

The instruction permitted the jury to award defendants damages if the plaintiff had a last clear chance with safety to himself to avoid striking the truck after it got into a position of imminent peril observable by him but failed to use means available to him and so negligently struck and damaged it, and appellant argues that it was erroneous because, as he contends, the last clear chance doctrine cannot be applied in Missouri in suits for damages to personal property. He contends especially that it cannot be done in respect to a counterclaim for such damages set up in the present kind of an action. He admits that the verdict on the counterclaim in his favor obviated prejudice to him from the instruction in so far as the counterclaim itself is concerned. But he contends that the assertedly erroneous instruction had "the effect of getting before the jury matters concerning the conduct of the plaintiff which had absolutely no place in a case tried on a humanitarian theory of personal injury to the plaintiff." That it was prejudicial because the court's so-called sole cause instructions referred the jury to the "other instructions herein" and it must be presumed that the jury consulted this instruction on the counterclaim along with the others.

But no Missouri case has been cited where reversal has been granted on any of the grounds urged against the instruction. On the contrary, Missouri courts of appeal in at least two cited cases have decided upon full consideration that recovery may be awarded for damage negligently done to property though the right to recovery is predicated solely upon negligence under the last chance or humanitarian rule. Borders v. Metropolitan St. R. Co., Kansas City 1912, 168 Mo.App. 172, 153 S.W. 72; Union Biscuit Co. v. St. Louis Transit Co., St. Louis, 1904, 108 Mo. App. 297, 83 S.W. 288, 289. In the latter case, which was an action to recover damages for a wagon, harness and goods resulting from collision with defendant's trolley car, the court said:

"This cause comes directly within the exception to the general rule that contributory negligence bars recovery, for fairminded men might well say that the motorman had the last chance to avoid a collision, even granting the driver was guilty of negligence."

█ Nor does it appear that giving the instruction in relation to the counterclaim caused the instructions as a whole to become self contradictory, unintelligible or unjust. The transaction at issue involved matters within common knowledge and upon the contradictory versions of the accident submitted to it the jury could have found for the plaintiff if it believed his version, or for defendants if that version was believed. There was substantial evidence that defendants had a last chance to save plaintiff and that plaintiff had a last chance to save the truck. The jury was not bound to, and obviously did not be-

116

lieve *either* version *in entirety*, and there was substantial evidence to support the verdict which it returned.

It does not appear that the court in performing its task of expounding the applicable Missouri law to the jury made any declaration induced by misconception of that law or any which would produce an unjust result or one contrary to that law.

No error having been found in the judgment, it is affirmed.