**BROWN**

v.

**PENNSYLVANIA FIRE INS. CO., PHILADELPHIA.**

No. 28658.

St. Louis Court of Appeals. Missouri.

Jan. 19, 1954.

894

Franklin E. Reagan, Adolph K. Schwartz, Sievers, Reagan & Schwartz, St. Louis, for appellant.

David M. Grant, Frank S. Bledsoe, St. Louis, for respondent.

RUDDY, Judge.

Plaintiff, respondent herein, brought suit in the Magistrate's Court of the City of St. Louis on an insurance policy to recover loss by windstorm. On appeal to the Circuit Court, the case was tried before a jury, resulting in a verdict and judgment in favor of plaintiff and against defendant, appellant herein, for $510, plus interest of $110, aggregating $620. After an unsuccessful motion for new trial defendant appealed.

It is admitted that the policy was issued by the defendant to the plaintiff and that it was in force on the date of the alleged loss, and that it was issued to the plaintiff as owner of the property at 2720 Delmar, St. Louis, Missouri. It was further admitted at the trial that proper proof of loss and demand for payment of the loss was made by the plaintiff to the defendant. By the terms of the policy it covered "direct loss by windstorm and hail."

The building involved was a three-story residence structure located at 2720 Delmar in St. Louis. It had a gabled roof, slanting to the north and to the south. The apex ran east and west, and the roof was covered with tar paper. The east wall of brick

extended above the roof and was referred to as a "fire wall." This extension above the roof line increased as it approached a point where the chimney was located, and lessened as it extended to the north and south. Plaintiff first moved into the building forty-five years prior to the trial, and after living there ten years he purchased the property. He had been told when he moved there that the building was then fifty years old. During all the period of his ownership he kept the property insured. He never had any trouble with the wall prior to the day in question.

In the afternoon of October 7, 1948, plaintiff was sitting inside his home and was about to turn on his radio to listen to a broadcast of a World Series baseball game, then apparently in progress, when, as he described it, "a big windstorm * * * come from * * * out of nowhere, and a big wind came in." At the same time he heard a noise and ran out of the door and found that the building had been damaged. He found that the fire wall "was broken in." He ran back into the house and down the stairs to the first floor, where he found a woman who lived there with her small child, "screaming and hollering." Thereafter, he brought them upstairs. Plaintiff testified that other buildings in the neighborhood were damaged as a result of the windstorm. He reported the damage to the agent of the defendant through whom he purchased the policy. The adjuster for defendant came out and told plaintiff there was no windstorm at the time of the alleged loss and said he couldn't pay him for the loss. Plaintiff thereafter had a contractor repair the loss, which included the repair of the fire wall and chimney. The contractor found that the cross pieces on the third floor had broken and caused the floor to break down. These cross pieces had to be jacked up and the flooring repaired. Plaintiff stated that the damage to the floor was the result of the windstorm blowing down the fire wall. He stated that the falling of the wall caused the rafters holding the floor to be knocked out. The total amount paid the contractor for repairing the house was $510.

A lady neighbor of the plaintiff who lived at 2738 Delmar, which was several doors west of plaintiff's property on the same side of the street, testified that on the same day plaintiff's building was damaged a pile of bricks were "blowed out" from her house by the "windstorm" and plaster fell down. She further testified that only the second floor was damaged and that there was no damage to the first floor. When asked what caused the bricks to fall, she answered, "I said it was a windstorm. It was a terrible little storm that evening."

Another lady who lived next door east of the plaintiff, testified in plaintiff's behalf and described the occasion in these words: "I never will forget it, like to scared me to death. * * * It came up a wind and all at once something fell on the top of my house and like to scared me to death. It blowed over on the top of my house, knocked a big hole." When asked if she heard the wind, she replied: "When I heard a little wind, and I looked and I looked out and couldn't see nothing but dust and all, and I run to the front door, and I run back to the back door, see what was happening. Q. Did you see dust in the front street from that wind? A. Yes; dust every which way." She further testified that her place was damaged from the pieces of brick that were blown over on her house. When pressed for an estimate of the velocity of the wind she couldn't say how fast it was blowing. She estimated the time the bricks fell was between 2:00 and 3:00 o'clock in the afternoon.

Plaintiff's contractor testified that he rebuilt the fire wall and two flues in the chimney; that the bricks below where he was working did not seem to be in bad condition; that the mortar between the bricks seemed "in pretty fair condition"; that he repaired the floor which had sagged about three or four inches and had to repair and strengthen the wall that supported the joists and that he replaced some of the window lights in the east wall. He further testified that in repairing the wall he used part of the old brick and some new brick; that he had two helpers in the repair work and that it took them ten or twelve days to

complete the repairs. He also testified that the sum of $510 he charged for the labor and materials furnished was reasonable. In describing what he observed when he came on the job he said the majority of the bricks had fallen outside the building and that the damage was confined to the upper part of the east wall. He didn't know what caused the damage and said the wall "seemed to have crumbled." He said as near as he could recall the roof had not pulled away from the building very much.

A contractor testifying in behalf of defendant said that he examined the building shortly after the occurrence and that the damage was in the area of the attic on the east wall and that the wall was in very poor condition. He further testified that the wall had pulled away from the roof and that the opening was covered with some waterproof tar paper. He said it was his impression that this opening had been covered some time previous to the occurrence. He said a very small portion of the wall had fallen out and when asked his opinion as to what caused the wall to fall, he said that a deterioration of the mortar had been going on for some time and that "any vibration of a big truck would have an effect of turning that wall over and dropping it into that gangway." He gave it as his opinion that a great many big trucks use that street. He said that the damage could have been caused by a windstorm, but it was his opinion that it was not so caused.

The adjuster for defendant said in his opinion there was no windstorm on the day the damage occurred and said that the damage was caused by a progressive process of deterioration climaxed by some sort of disturbance, possibly a passing truck or bus. He said his opinion was the result of his examination of the brick, which he found pulpy and very soft, and of the mortar, which he found to be crumbly. His examination of the building indicated that there had been a space of approximately two inches between the roof and the brick wall that had been there for some time.

Defendant introduced in evidence a report from the United States Weather Bureau showing wind data taken from instruments exposed on the Railway Exchange Building in St. Louis. The report showed that the maximum wind velocity for a five minute period on October 7, 1948, was 26 miles per hour from the southwest beginning at 1:49 p. m., Central Standard Time; that the wind movement for the hour ending at 3:00 p. m. that day was 17 miles per hour from the same direction. A scale introduced in evidence by the defendant classified as "moderate" a wind of 13 to 18 miles per hour and one that raises dust and loose paper and moves small branches.

The first point relied on by defendant is that the court erred in refusing to direct a verdict for the defendant, because the evidence was insufficient to show that plaintiff sustained any direct loss and damage by reason of a windstorm. In support of this contention it asserts that plaintiff can not make a submissible case by building an inference upon an inference. It further asserts that the circumstances shown were insufficient to show the existence of a windstorm and that the term "windstorm" means more than an ordinary wind. Defendant also asserts that the courts are without authority to rewrite the insurance contract in order to cover plaintiff's claim. In further support of its first point defendant contends that a windstorm was not the proximate cause of the damage to plaintiff's building. Plaintiff has not furnished us with a brief.

This first point relied on by defendant and the contentions in support of it require a determination of whether there was sufficient evidence from which the jury could find that plaintiff's damage was caused by a "windstorm." In the first case in this state involving the definition of a "windstorm" this court in Schaeffer v. Northern Assurance Co., Mo.App., 177 S.W.2d 688, loc. cit. 691, said:

"The term 'windstorm' has never been judicially defined in this state so

far as we are advised. It is a simple term and is defined by Webster as 'a storm characterized by high wind with little or no precipitation.' The term as used in a policy of insurance such as that with which we are here concerned means a wind of unusual violence. It is something more than an ordinary gust of wind or current of air no matter how long continued. It need not have the violence or the twirling or whirling features of a cyclone or tornado, but it must assume the aspects of a storm, that is, an outburst of tumultuous force. Jordan v. Iowa Mut. Tornado Ins. Co., 151 Iowa 73, 130 N.W. 177, Ann.Cas.1913A, 266.'"

In Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., Mo.App., 210 S.W.2d 700, after adopting the definition in the Schaeffer case, supra, the court at pages 702 and 703 said:

"This seems to sufficiently define it. Windstorms, like any other kind of storms, vary in violence *and policies must be construed to cover a windstorm of any force and turbulence.* If an insurer wishes to limit its liability to damages caused by storms of certain measured velocity or duration the policy should so state. * * * As to whether or not a windstorm caused the damages was a question for the jury as it was an issue of fact. * * * There must be adequate evidence, of course, to sustain a verdict, but in determining this the court is obliged to view the evidence and to draw all reasonable inferences from it in a light most favorable to the plaintiff. Defendants offered the records of the United States Weather Bureau, which were compiled from data taken some distance from the location of the building and showed a maximum wind velocity of 23 miles per hour for November 30. There was evidence that the records disclosed that the wind at the point they were taken was of a velocity of 17 miles an hour at the time the tower fell but this was not conclusive that the same condition prevailed in the neighborhood of Park Avenue, some distance away." (Emphasis ours.)

Viewing the evidence, as we must, in the light most favorable to plaintiff and giving to plaintiff the benefit of all reasonable inferences, we find that plaintiff heard a "big windstorm" just before he heard the wall fall. In describing the damage to the floor, he said it was caused by "the windstorm knocking the fire wall off and caused the rafters to be knocked" out. There was evidence that other buildings in the neighborhood were damaged at the same time by the windstorm. The witnesses variously, described the wind as a "big windstorm," "a big wind," "a terrible little storm." One witness said when she heard the wind she "looked out and couldn't see nothing but dust, * * * dust every which way." This took place at the time the witness heard the falling bricks. We consider the foregoing statements and others hereinbefore outlined as sufficient evidence from which a jury could find that there was a wind of more than ordinary velocity, possessing the aspects of a storm and that it was a "windstorm" within the meaning of the policy issued by defendant. We are also of the opinion that the evidence was sufficient to show that the windstorm could have been the proximate cause of the damage to plaintiff's building and was therefore a question for the jury. The trial court properly refused to direct a verdict for defendant.

The second point relied on by defendant is that the trial court erred in giving plaintiff's Instruction No. 1. In this connection it contends that the instruction assumes controverted facts, ignores the defense that the wall collapsed because of its own deterioration, and that said instruction contains no proper measure of damages. Plaintiff's Instruction No. 1, after submitting the uncontroverted facts of the ownership of the building and the date of the occurrence, reads as follows: " * * * and if you further find that on said day plaintiff's said building was directly damaged

by windstorm, then your verdict will be in favor of the plaintiff and against the defendant for the amount of the damages, if any, to said building caused by said windstorm, but not to exceed the sum of $510, and to the amount so found, if any, you may add interest at 6% per annum from December 8, 1948." In considering this second point of defendant, it is important that we consider Instruction No. 2, given at the request of defendant. This instruction told the jury that before it could find a verdict for the plaintiff, it must find that damages claimed by plaintiff were directly and proximately caused by a windstorm; that if the jury found that the wall fell and collapsed due to the poor condition of the wall or that the mortar in between the bricks was of poor grade and deteriorated, and by reason thereof the wall fell and damaged plaintiff's property, and that said damage directly and proximately resulted from its weaknesses aforesaid and not from windstorm, then the verdict should be for the defendant. Defendant's Instruction No. 3 told the jury that a windstorm in contemplation of law is a storm characterized by high wind; that an ordinary wind, no matter how prolonged, was not a windstorm; that to constitute a windstorm the wind must be of such violence and velocity as to assume the aspects of a storm or an outburst of tumultuous force; that it was plaintiff's burden to show the damage in question was by a windstorm and was the direct and proximate cause of plaintiff's damage, and unless the jury found that a windstorm, as so defined, was the direct and proximate cause of plaintiff's damage, then the verdict should be for the defendant.

Plaintiff contends that Instruction No. 1, assumed the existence of a windstorm. The instruction requires the jury to "find that on said day plaintiff's said building was directly damaged by windstorm * * *." We do not believe this instruction assumes either the fact of damage or the existence of a windstorm. Both elements, i. e., the existence of a windstorm and damage by a windstorm, were required to be found by the jury before it could find in favor of the

plaintiff. Neither the fact of damage nor the existence of a windstorm was assumed in this instruction. Defendant's instruction No. 3 defined for the jury the meaning of a windstorm. The cases cited by defendant in support of its complaint of this instruction are distinguishable. In Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W. 2d 559, loc. cit. 562, the instruction was held erroneous because it assumed the fact that the automobile in which plaintiff was riding "was being driven at a rate of speed so as to endanger the life and limb of others". In Alexander v. Hoenshell, Mo.App., 66 S.W.2d 164, loc. cit. 168, the instruction was objectionable because it failed to set out the circumstances under which, if found to be true, " 'the defendant negligently turned his automobile to the left and north and then started across said highway.' " The court held that the instruction assumed negligence on the part of defendant. In the case of Kirkham v. Jenkins Music Co., 340 Mo. 911, 104 S.W. 2d 234, loc. cit. 237, the instruction under review erroneously assumed that the path of defendant's approaching automobile was outside of, or to the left of the safety zone, and the instruction thereby assumed as a fact that it was necessary for plaintiff to step outside of the zone to get into the pathway of the car, whereas, plaintiff testified that she did not step outside of the zone. In the other cases cited by defendant, Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, and Melber v. Yourtree, Mo., 203 S.W.2d 727, the court in each case assumed as true controverted facts. We find no such error in the instruction under review.

■ Defendant makes the further contention that Instruction No. 1 was erroneous because it ignored the defense that the collapse of the building wall was due to deterioration. In State ex rel. Jenkins v. Trimble, 291 Mo. 227, 236 S.W. 651, loc. cit. 653, the Supreme Court related the rule applicable to this case, when it said:

" 'Where the plaintiff's instruction omits some feature which is not an element of his cause of action, but of the

defense which is set up, the omission may be cured by instructions for defendant submitting that feature.'"

The issue of the deterioration of the walls was solely a matter of defense asserted by the defendant and it was not an element of plaintiff's cause of action. This defense was fully covered in defendant's Instruction No. 2. The two cases cited by defendant, Thomas v. American Central Insurance Co., Mo.App., 297 S.W. 982, and Sells v. Fireside Life Association, Mo.App., 66 S.W.2d 955, in support of its contention involved situations where the trial court gave no instruction in behalf of defendants on the defenses offered and failed to submit the defenses in any of the instructions given in behalf of the plaintiffs.

Defendant next contends that plaintiff's Instruction No. 1 failed to properly state to the jury the correct measure of damages. This contention will be disposed of in our consideration of the last point relied on by defendant, which is, that the trial court erred in overruling defendant's motion for a directed verdict because plaintiff failed to prove any damages. In support of this contention defendant takes the position that there was a total failure of proof as to the value of the property before and after the loss.

The only evidence touching the measure of damages sustained as a result of the windstorm loss was given by plaintiff and his contractor. Plaintiff testified that the total amount he paid the contractor for the repairs was $510. The contractor testified to the extent of repairs made by him and that the amount of $510 charged by him for the labor performed and the materials used was reasonable. Plaintiff's Exhibits 2 and 3 were identified as contracts for the repair of the loss, but when they were offered in evidence by plaintiff, as proof of the repairs made, their introduction was denied, when an objection to their admission in evidence was made by defendant. There is no evidence showing the value of the property, either before or after the windstorm loss.

■ The rule established in this state through a long line of cases is that the measure of damages to real property is the difference between the market value of the property immediately before and immediately after the damage is sustained. St. Louis Trust Co., etc., v. Bambrick, 149 Mo. 560, 51 S.W. 706; Tinsley v. Aetna Ins. Co. of Hartford, Conn., 199 Mo.App. 693, 205 S.W. 78; Security Printing Co. v. Connecticut Fire Ins. Co. of Hartford, Conn., 209 Mo.App. 422, 240 S.W. 263; Jarnagin v. Queen Ins. Co. of America, Mo.App., 272 S.W. 1095; Rosen v. Kroger Grocery & Baking Co., Mo.App., 5 S.W.2d 649; Johnstone v. Home Ins. Co. of New York, Mo.App., 34 S.W.2d 1029; Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co., Mo.App., 223 S.W.2d 100.

In the case of Johnstone v. Home Ins. Co. of New York, supra, plaintiffs brought suit upon a fire insurance policy for partial destruction of their home by fire. Defendant contended that plaintiffs offered no competent evidence on the question of the amount of damages sustained by them. This court, in discussing this point, said:

"* * * our courts hold, * * * that 'the damage done to the property is properly ascertainable by proof of the reasonable value of the property immediately prior to the fire and the reasonable value thereof immediately after the fire'". 34 S.W.2d loc. cit. 1033.

In that case the plaintiffs did introduce evidence as to the actual cost of the repairs and in commenting upon the sufficiency of this evidence as proof of the measure of the damages, we said:

"The plaintiffs did introduce evidence as to the actual cost of the repairs, which was proper, as throwing some light on the question of value after the fire, but that is not the measure of the value. * * *

"* * * evidence of the cost of repair is a proper element to be considered, but it is not conclusive of the value of the property after the loss. (Citing cases.)" 34 S.W.2d loc. cit. 1033.

We are cognizant of the statement made in Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co., 223 S.W.2d 100, loc. cit. 104, 105, when we said:

"The general rule, as heretofore stated, is that the measure of damage is the difference between the reasonable value of the property before and the reasonable value thereof after the accident. We are aware that in cases where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof, there is an exception to the above general rule. However, before allowing plaintiff to rely solely on evidence of the costs of repair, there should be a showing of the comparative insignificance of the damage to bring the case within such exception to the general rule. After such a showing is made the actual costs of repair might then be shown as a basis for determining the value to plaintiff of the property before and after the accident. In the case at bar plaintiff has not produced any evidence to show such exceptional situation and we have no right to indulge in guess work about it."

Without agreeing that such an exception to the general rule does exist, it is evident in the case before us that there is no evidence to show that the amount of damage is insignificant as compared to the value of the property as a whole. If we were permitted to draw any inference as to value, it would seem that the property, being very old, might well be of little value, and as a consequence, the value of the repairs made, may not be insignificant when compared to the value of the property as a whole.

■ However, we hold the general rule, as heretofore stated, applicable to this case and it was therefore incumbent on plaintiff to introduce evidence showing the market value of the property immediately before and immediately after the damage by the windstorm. Because of plaintiff's failure to do so there was insufficient evidence on which to predicate an instruction on the measure of damages.

In accordance with what we have said, the judgment must be reversed. Plaintiff may be able to provide the evidence omitted in the first trial, and as a result the cause should be remanded to the Circuit Court for a new trial. It is so ordered.

ANDERSON, P. J., and BENNICK, J., concur.