Ruth Ann WILLIAMS, by Loraine Williams, Her Next Friend, Appellant,

v.

Henry H. RICKLEMANN, Respondent.

No. 44951.

Supreme Court of Missouri.

Division No. 2.

July 9, 1956.

Thomas & Busse and Cullen & Godfrey, St. Louis, for appellant.

Kerth, Thies & Schreiber, Clayton, for respondent.

STORCKMAN, Judge.

The plaintiff, a schoolgirl nine years old at the time of the accident, brought this action by her mother as next friend for damages in the sum of $25,000 for personal injuries sustained by her as a result of being struck by an automobile operated by the defendant. The case was submitted upon the humanitarian doctrine and the jury's verdict was in favor of the defendant. The plaintiff has appealed.

The accident occurred on Florissant Road near Brotherton Lane in St. Louis County. At the place in question Florissant Road runs generally in an east and west direction. Brotherton Lane runs into Florissant from the south and Woodstock Avenue from the north, slightly to the east of Brotherton. Both Brotherton and Woodstock end at their junctions with Florissant and do not extend beyond.

Shortly after 7 o'clock a. m. on September 23, 1952, plaintiff's parents, on their way to work in St. Louis, let the plaintiff and her eight year old sister out of their automobile at the southeast corner of Florissant Road and Brotherton Lane. The children were on their way to school and ex-

pected to cross Florissant Road from the south to the north side and catch a school bus at the corner of Florissant and Woodstock. While she was attempting to cross Florissant Road plaintiff was struck by defendant's eastbound automobile and severely injured.

The case was submitted to the jury upon humanitarian negligence in failing to slacken the speed of defendant's automobile or to swerve and change its course. Plaintiff's motion for a new trial was overruled "on the grounds that plaintiff's evidence failed to make a submissible case and the Court erred in overruling * * * defendant's motion for directed verdict in favor of defendant."

Plaintiff alleges that the trial court committed error in refusing to give her Instruction A which was designed to submit the question of whether defendant was also negligent in failing to give a timely warning and also that the court erred in sustaining defendant's objection to plaintiff's counsel's comment in closing argument on the failure of the defendant and his wife to testify and in ruling and instructing the jury that they were equally available to counsel on both sides and that no inference could be drawn from their failure to testify. Defendant contends that the plaintiff did not make a submissible case and therefore the judgment should be affirmed in any event. We will first consider whether plaintiff made a case for the jury.

In substance, the evidence showed that the defendant and his wife were driving east on Florissant Road. Following behind them at a distance of about 75 feet were Edward Thomas Neely, Jr. and Earl Louis Aubuchon riding in the front seat of Aubuchon's car. At the place in question Florissant Road is 45 feet wide and there is space for four traffic lanes, two for westbound and two for eastbound traffic. Neely testified that the car in which he was riding was in the eastbound lane nearest the middle of Florissant Road and defendant's car was immediately ahead in the same traffic lane

traveling in a straight line. He estimated that both cars were traveling about 25 miles an hour. It was a clear day and the streets were dry. An eastbound motor bus had stopped on Florissant just west of Brotherton with its right wheels on the shoulder and the left wheels about three or four feet onto the pavement. When the front of defendant's car was about even with the front of the bus, Neely got a fleeting glimpse of the child as she ran from the shoulder on the south side out onto the street. The view he had of her was in the space between the standing bus and defendant's car; then he saw her books and the package she was carrying flying into the air. Neely did not notice any diminishing of the speed of defendant's car prior to the accident and it did not appear to swerve or change its course. Neely testified that after the accident plaintiff was lying at about the center line of Florissant Road. He did not know how many feet east of the front of the bus the child's body was, but he did not think it was entirely east of the intersection.

Aubuchon's testimony was substantially the same as Neely's. He testified that after the accident the plaintiff's body was lying in about the center of Florissant Road about even with the western line of Woodstock Avenue.

Mrs. Lonnie Williams, mother of the plaintiff, testified that she and her husband let the children out of their automobile near a telephone pole on the south side of Florissant east of Brotherton Lane. They would have to cross Florissant Road from south to north to get their school bus at the corner of Woodstock.

The plaintiff's sister, Shirley, ten years old at the time of trial, testified that her mother let her and her sister off at the telephone pole and they stood there and waited to get across the street. A bus driver motioned for them to go across and the plaintiff, Ruth Ann, went ahead of her. She did not recall whether Ruth Ann was walking, but denied making a statement

that she tried to keep her sister from running out into the street but that her sister would not listen to her. Shirley did not see the defendant's automobile before the accident.

The plaintiff, Ruth Ann, was sworn but could hardly remember anything about the accident. She did not see the automobile that struck her and did not hear any automobile horn sounded.

Admissions against interest from defendant's deposition taken August 4, 1954, were introduced in evidence to the effect that the defendant had had his brakes checked on the Saturday before the accident and that his automobile was in good condition; that about three or four feet of the stopped bus was on the traveled portion of the road at the southwest corner of Florissant and Brotherton; that the plaintiff, when he first saw her, was about three or four feet onto the pavement and running, and was at least 40 to 50 feet east of the bus; that the front of his automobile was 20 to 25 feet from her; that his automobile was traveling between 20 and 25 miles per hour; that he could stop his automobile in approximately 40 feet traveling at 20 miles per hour and in 50 feet at 25 miles per hour; that he had clear vision and there were no trees, bushes or anything else obstructing his view when he first saw the girl; that he put on his brakes and swerved about two feet to the right, but he did not sound his horn because he did not have time; that the plaintiff got across in front of him and then turned around and came back; that she was facing towards his car at the time she was hit and she ran against the side of the left front fender.

■ In determining whether a case was made for the jury on the question of defendant's liability, we must consider the evidence in the light most favorable to the plaintiff and give her the benefit of every reasonable inference which the evidence tends to support.

■ Defendant contends that the admissions against interest from defendant's deposition "offered by the plaintiff and otherwise unrefuted by the plaintiff, is binding upon the plaintiff." The plaintiff did not offer the entire deposition; defendant was permitted, however, to read additional portions over plaintiff's objection. The rule is well established that estimates of the time, speed or distance or the position of an automobile or train at the time of an accident are not conclusively binding on a party and do not preclude him from relying upon more favorable testimony of other witnesses unless the testimony of the other witnesses is inconsistent with his theory of the case or contrary to physical facts. Smith v. Siercks, Mo., 277 S.W.2d 521, 525; Davis v. Kansas City Public Service Co., 361 Mo. 168, 233 S.W.2d 669, 674; Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470, 474.

■ To whatever extent there are other facts and circumstances in evidence from which the jury could draw an inference contrary to the defendant's version of the facts, then to such extent the plaintiff was not bound by the defendant's statements unfavorable to her case, and she is left free to claim the full benefit of all contrary inferences. Williams v. Excavating & Foundation Co., 230 Mo.App. 973, 93 S.W.2d 123, 126.

■■ The plaintiff may have the benefit of the favorable portion of defendant's testimony and may use it in combination with other favorable evidence in the case since "the jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case." Hutchison v. Thompson, Mo., 175 S.W.2d 903, 911 [9, 10].

Giving effect to these rules, the jury could reasonably find from the evidence that the defendant was driving his automo-

bile at a speed of 20 miles per hour in the eastbound lane of Florissant Road nearest the center of the street and traveling at this speed he could safely stop within a distance of approximately 40 feet. The jury could also justifiably find that the plaintiff had started running across the street when the front of defendant's automobile was about even with the front of the parked motor bus, and that such point of crossing was at least 40 to 50 feet ahead of the bus and hence at least 40 to 50 feet east of the front of defendant's automobile. If plaintiff was onto the pavement three or four feet when defendant first saw her, then at that time she would have also been to defendant's right or south of his automobile at least 12 or 13 feet. The jury could also find that the defendant, in the exercise of due care, could have seen the plaintiff on the shoulder of the highway and when she started to run across the street prior to his coming abreast of the bus, since only about three or four feet of the bus was on the paved portion of Florissant Road and it was standing west of the west line of Brotherton. That defendant had the opportunity to discover plaintiff's position of peril sooner than he did is also supported by Plaintiff's Exhibit 1, a photograph of the scene of the accident.

Defendant's Exhibit A, which was adopted by plaintiff and introduced in evidence as Plaintiff's Exhibit 2, as a sketch of the conjunction of Florissant, Brotherton and Woodstock and shows measurements with respect to various objects mentioned in the evidence. This exhibit is even more favorable to plaintiff. It shows the distance from the front of the stopped motor bus to the telephone pole, where the children were deposited by their parents and where the jury might reasonably find the plaintiff attempted to cross the street, to be 71 feet. The intersection of the center line of Florissant and the west line of Woodstock Avenue where Aubuchon testified the plaintiff's body was lying after the accident is shown to be several feet further east of the telephone pole.

Defendant admitted that he first saw the plaintiff when she was running across the pavement three or four feet from the southern edge, but when he first saw her is not the full measure of his duty. The operator of an automobile upon public highways has imposed upon him the continuous statutory duty to exercise the highest degree of care to keep a lookout for persons thereon. Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116, 123–124. Riley v. Young, Mo.App., 218 S.W.2d 805, 808. The zone of imminent peril may extend beyond the path of the vehicle. Wabash Railroad Co. v. Dannen Mills, Inc., Mo., 288 S.W.2d 926, 928–929 [3, 4]; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S.W.2d 809, 812; Bray v. St. Louis-San Francisco Ry. Co., Mo. App., 259 S.W.2d 132, 141 [16]. The operator must keep a lookout ahead and laterally ahead so as to see anyone on the shoulders of the highway, and the duty to act to avert injury begins when the operator sees, or could by the exercise of the highest degree of care first see, a pedestrian "moving toward the path of his automobile apparently intending to continue into its path and apparently oblivious of its approach, and when the peril became imminent." Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 938.

Under the law and the evidence the plaintiff made a submissible case under the humanitarian doctrine and the court did not err in overruling defendant's motion for a directed verdict. See De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628 and Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935.

We have also concluded that plaintiff's offered Instruction A, submitting the issue of timely warning, should have been given. In view of the opportunity the defendant had to see the plaintiff as she started running across the road toward the path of his car, the evidence with respect to the distances involved and the position of defendant's automobile, we cannot say as a matter of law that a timely warning could

not have been given by the defendant and heeded by the plaintiff. See Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 939, wherein the court states: "The jury had a right to reasonably conclude from the instant facts that there was a place and time when, in the exercise of the highest degree of care, and after peril became imminent, and when action could be effective, that Osborn could have avoided the collision by slackening speed or by turning right instead of left *or by warning*, and that he negligently failed to do so. Appellants' argument in this court seems to proceed upon the theory that Osborn was under no duty in the driving of his automobile to be cognizant of the situation out ahead of him and ready to act upon the appearance of danger, and was under no duty to have seen or to have acted before Osborn states he saw and acted. Such is not the law." (Emphasis supplied.) See also Scaggs v. Uetrecht, Mo., 244 S.W.2d 17, 19.

The plaintiff further complains that the court erred in sustaining defendant's objection to plaintiff's closing argument to the jury commenting upon the failure of the defendant and his wife to testify. The transcript shows that the following occurred:

"Mr. Godfrey: At any rate, Ladies and Gentlemen of the Jury, the Court is not instructing you that if Mr. Rickelman could not stop that automobile—that is not an issue here, that is absolutely out of this court room. The question is could he have slackened the speed of that automobile, or could he have swerved that automobile, in order to avoid that accident and in order to avoid striking Ruth Ann Williams. That is the point in issue here. Mr. Rickelman didn't testify, his wife didn't testify, no one testified * * *.

"Mr. Kerth: I am going to object to that. That is in very prejudicial language. Mr. and Mrs. Rickelman were here in Court, subject to being called by you. We read the deposi-

tion, I read that, I read the offer by you, and I am going to move, that remark being highly prejudicial, that the Court declare a mistrial at the cost of the plaintiff. That is a very important remark.

"Mr. Godfrey: It is my understanding that if the defendant and his wife doesn't testify—they are more available to the defendant than they are to the plaintiff.

"The Court: I will instruct the jury that both Mr. Rickelman and his wife were available to counsel on both sides and could have taken the stand for counsel on either side, inasmuch as they were present here.

"I am instructing the Jury that there is no inference to be drawn from the fact that one counsel or the other counsel failed to utilize either Mr. Rickelman or Mrs. Rickelman as a witness in the case, so bear that in mind and disregard the possible inference from the comment of Mr. Godfrey. Overrule the motion for mistrial, however."

The defendant does not undertake to justify the court's ruling on his objection, but contends that "The remarks of a Judge to the jury, to which no objection was made, could not be complained of on appeal." The defendant has failed, however, to point out in what particular the plaintiff failed to satisfy the statutory requirements with respect to objections. We consider this entire sequence to be the court's ruling on defendant's objection. Formal exceptions to rulings of the court are no longer necessary. Section 510.210 RSMo 1949, V.A.M.S. The action of the court in sustaining the objection is charged as error in specification No. 5 of plaintiff's motion for new trial. The cases cited by defendant deal with what is necessary to preserve a question for review under both the old and new practice. None of them is in point on the precise question here involved.

We are convinced that the trial court's ruling sustaining the defendant's objection to plaintiff's argument was erroneous. The fact that defendant and his wife were in the courtroom did not make them equally "available" to plaintiff as witnesses. Block v. Rackers, Mo., 256 S.W.2d 760, 764; State v. Collins, 350 Mo. 291, 165 S.W.2d 647, 648. In Block v. Rackers the court covered the subject matter here involved in this fashion, 256 S.W.2d loc.cit. 764: "It could hardly be anticipated that his testimony would be favorable to plaintiff or that she could safely vouch for his testimony by placing him upon the witness stand. He was not 'available' to plaintiff as a witness, because of his personal interest (adverse to plaintiff) in the outcome of the case. [Citing cases.] Further, it is well settled that the failure of a party having knowledge of the facts and circumstances vitally affecting the issues on trial to testify in his own behalf, or to call other witnesses within his power who have knowledge of such facts and circumstances, raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer the same. [Citing cases.] Such failure may be commented upon in argument."

Nor was the defendant's wife equally "available" to the plaintiff under the facts of this case. Absent proof to the contrary, a wife's loyalty and devotion to her husband should be considered to create a more potent relationship than that which has impelled the courts to hold other witnesses not to be equally available to both parties. See Trzecki v. St. Louis Public Service Co., Mo., 258 S.W.2d 676, 678 [1–3]; Deaver v. St. Louis Public Service Co., Mo. App., 199 S.W.2d 83, 85.

In this situation the denial to plaintiff's counsel of the right to comment upon the failure of defendant to take the stand and to call his wife as a witness constituted prejudicial error. McInnis v. St. Louis-Southern, Inc., 341 Mo. 677, 108 S.W.2d 113, 116.

Plaintiff's motion for a new trial should have been sustained. Accordingly the judgment is reversed and the cause remanded.

All concur.