Mary HALL, Appellant,

v.

George CLARK, Respondent.

No. 45301.

Supreme Court of Missouri,
Division No. 2.

Jan. 14, 1957.

Rehearing Denied Feb. 11, 1957.

Thomas F. Manion, J. D. Leritz, J. L. Leritz, St. Louis, for (plaintiff) appellant.

Ernest E. Baker, St. Louis, for respondent.

BOHLING, Commissioner.

This is an intersection collision case between a Plymouth and a Chevrolet automobile. Mary Hall sued George Clark, who filed a counterclaim. The jury found the issues against the plaintiff on plaintiff's claim and in favor of defendant on his counterclaim; and, in accordance with the verdict, judgment was entered for $12,500 against plaintiff. Plaintiff contends error was committed in the giving of instructions, in the admission and exclusion of evidence, and that the verdict is grossly excessive.

Plaintiff predicated a verdict on negligence under the humanitarian doctrine in that defendant failed to sound a warning, or failed to stop, or to reduce speed, or to swerve his automobile.

Defendant's instructions were to the following effect: No. 1 was an abstract instruction informing the jury every driver of an automobile was required to exercise the highest degree of care and a failure to exercise the highest degree of care constituted negligence. No. 3 was a defendant's burden of proof instruction. No. 4 predicated a defendant's verdict upon findings that plaintiff failed to come to a complete stop for the intersection and that such failure to stop constituted negligence, if the jury found defendant was not negligent as submitted in the instructions. No. 6 was a defendant's converse humanitarian instruction. No. 7 was a sole cause instruction. No. 13 was defendant's measure of damages instruction.

Plaintiff attacks defendant's sole cause instruction on several grounds, including the ground that the evidence did not present a sole cause situation. The instruction predicated a verdict for defendant on plaintiff's claim on findings that plaintiff drove her car "to the south of a motor truck at said intersection, and that she emerged from the south side of said motor truck and drove into the path of defendant's automobile, at a time when the defendant's automobile was approaching and was so near to plaintiff, and traveling at such a rate of speed that plaintiff, in the exercise of the highest degree of care, knew or should have known that a collision was likely to result," and a finding that such action on the part of plaintiff was negligence and the sole, direct and proximate cause of the collision. It, in form, is much like instructions approved in Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 465 [7]; Jants v. St. Louis Pub. Serv. Co., 356 Mo. 985, 204 S.W.2d 698, 701 [1–8]; Schlemmer v. McGee, Mo., 185 S.W.2d 806 [1, 2].

Defendant says plaintiff failed to make a submissible humanitarian case and cannot complain of error in defendant's sole cause instruction or error in its abstract instruction (No. 1). Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171,

232 S.W.2d 954, 960 [11–13]; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899, 900; Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764, 769; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 74 S.W.2d 600, 604. The issues call for a statement of the facts.

The collision occurred at the intersection of Bremen, an east-west street, and North Florissant boulevard (for brevity herein designated Florissant), a north-south street, in the city of St. Louis between 4:00 and 4:15 p. m. August 8, 1949, a clear, dry day. Each street is 36 feet wide. Bremen is level, but there is a slight downgrade for southbound traffic on Florissant at Bremen. There were "stop" signs at both corners on Bremen for traffic approaching Florissant, but none on Florissant for Bremen. The westbound traffic "stop" sign was about 19 or 20 feet east of the curb on Florissant and about 20 feet farther east was a "No Parking" sign. At the northeast corner of the intersection is a small lawn, a sidewalk and then a brick building, its west wall being 10 or 12 feet east of the curb of Florissant.

Defendant was driving a 1947 Chevrolet southwardly on Florissant, with his wife and Mrs. Doris Finch on the seat with him. His car was proceeding about 7 or 8 feet east of the west curb and 2 or 3 feet west of the center line of Florissant, and traveling 25 to 30 m. p. h. The Chevrolet was in good operating condition.

Plaintiff (her only witness to the collision) was driving a 1949 four-door Plymouth westwardly on Bremen, following a course about 8 feet south of the north curb and about 2 feet north of the center line of Bremen. She had been driving for 35 years and was familiar with the intersection. She was traveling about 20 to 25 m. p. h. as she approached Florissant. She came to a complete stop about even with or a little past the stop sign, about 19 feet east of Florissant, and had reached a speed of approximately 12 to 15 m. p. h. when her car was struck. She saw an eastbound

Krey Packing Company Ford, driven by Raymond Faupel, approaching Florissant, which stopped west of Bremen for the intersection. When she stopped she looked to the north and to the south. Then, as she "eased up" to the crosswalk, she again looked to the south and to the north, and as there was no traffic from the north or south on Florissant, she proceeded to cross the intersection with her car in low gear. She estimated she could see 150 to 200 feet north and 75 feet south on Florissant. Defendant offered in evidence part of a deposition by plaintiff to the effect that she stopped at the stop sign and that she did not look north or south on Florissant after she started up. Plaintiff looked straight ahead as she crossed the intersection and did not see defendant's car. When the front of plaintiff's car was about at the west crosswalk and the front wheels about at the west curb of Florissant, she heard an application of brakes and "almost simultaneously," the rear of the right rear door and rear fender of her car was struck by the front of defendant's car and plaintiff's car was knocked against the front bumper of the Krey Packing Company Ford parked in the south lane of Bremen at the west edge of the west crosswalk of the intersection. The Plymouth stopped at an angle, headed northwest, with the right rear wheel perhaps in the intersection and most of the car west of the west curb line of Florissant.

For the defendant there was testimony that northbound and southbound traffic was moving on Florissant at the time and place in question; that defendant was traveling 25 to 30 m. p. h.; that plaintiff did not stop but entered and proceeded across the intersection at the speed of 20 to 25 m. p. h., and when plaintiff's car was 2 or 3 feet past the center line of Florissant it was struck on the right rear door by defendant's Chevrolet. Defendant and Mrs. Finch testified that a truck was parked at the north curb of Bremen east of Florissant and west of the stop sign. Defendant testified plaintiff was traveling south of this truck, which was

higher than a passenger car, and he first saw plaintiff's car as it was emerging from south of the truck and coming into the crosswalk. "I thought that she was going to run right out in front of me, and I immediately applied by brakes." Defendant was then somewhere like 30 or 40 feet or 50 feet from the north curb of Bremen. He also testified that plaintiff traveled 50 to 65 feet from the point where he first saw her to the point of collision. Defendant's witnesses Lonnie Huitt and Raymond Faupel put the speed of the Plymouth at 15 to 20 m. p. h. and 15 m. p. h., respectively.

Plaintiff testified there were no automobiles at the intersection, parked or moving, other than her car and the Krey Packing Co. Ford. Huitt testified that a truck was parked at the east curb of Florissant, north of Bremen sidewalk, and as he looked between this truck and the building he saw the Plymouth coming through the "stop" sign on Bremen. Defendant did not see this truck. Faupel stated that the only parked car near Florissant and Bremen was at the south curb of Bremen at least 32 feet east of Florissant.

Faupel stated that defendant did not swerve his car but it "shot off" to the left after the impact.

Plaintiff testified she heard no horn. Defendant's witness Faupel testified defendant did not sound his horn. No witness testified to hearing a horn. Defendant testified: "Q. Did you sound a horn? A. I don't remember. Q. Did you sound your horn? A. I don't know."

■ The collision occurred in the northwest quadrant of the intersection. The front wheels of plaintiff's Plymouth were even with the west curb of Florissant and the north side of the Plymouth was 8 feet south of the north curb of Bremen. The jury could find that she traveled about 56 feet after stopping at the stop sign before her car was struck. She was oblivious of defendant's automobile. Defendant stated he saw plaintiff coming into the east crosswalk, and that plaintiff traveled 50 to 65

feet thereafter. Plaintiff traveled at least 46 feet after defendant saw her car. Her average speed was 6 or 7½ m.p.h. At 6 m.p.h. she moved about 9 feet a second; and at 7½ m.p.h., about 11 feet a second. Four seconds elapsed after she "started up" before the collision occurred. Although defendant's witness Huitt's testimony is somewhat confusing he testified that he was driving south about 30 to 35 feet back of defendant, and when he first saw plaintiff's car "coming through the stop sign" he was ("around that neighborhood, approximately") 150 feet north of the intersection. Plaintiff was not necessarily bound by defendant's estimates of speed and distance offered by her as admissions against defendant's interest. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280 [2–5], and cases cited.

A witness for plaintiff testified on direct examination that a 1947 Chevrolet traveling 25 m.p.h. could stop in 30 to 34 feet braking distance, to which should be added about 20% for reaction time, or 36 to 42 feet; and traveling 30 m.p.h., could be stopped in 40 to 45 feet braking distance, and 20% added for reaction time, or 48 to 54 feet. On cross-examination the witness estimated the stopping distance, allowing ⅔rds of a second for reaction time, to be 59 feet at a speed of 25 m.p.h. and 75 feet at 30 m.p.h.; and, allowing ¾ths of a second for reaction time, in 62 feet at 25 m.p.h.

■ Viewing all the evidence in the light most favorable to plaintiff, including the reasonable inferences to be drawn therefrom, De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3, 4]; Wofford v. St. Louis Pub. Serv. Co., Mo., 252 S.W.2d 529, 531 [4], plaintiff made a submissible humanitarian case on defendant's duty to warn or swerve. Williams v. Ricklemann, supra, 292 S.W.2d loc. cit. 281 [8, 9]; Wofford v. St. Louis Pub. Serv. Co., supra, 252 S.W.2d loc. cit. 531 [1–3]; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 939; Bunch v. Mueller, Mo., 284 S.W.2d 440, 443 [3–7]; De Lay v. Ward, supra, 262 S.W.

2d loc. cit. 634, 635. Plaintiff could see 150 to 200 feet north on Florissant and from defendant's witness Huitt's testimony that, when approximately 150 feet north of Florissant, he first saw plaintiff and defendant was about 35 feet ahead of him, the jury could find that defendant could have stopped or reduced speed and avoided striking plaintiff's car. The Bunch and Wofford cases, supra; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463, 467 [8–11]; Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 12.

■ A defendant is entitled to a converse humanitarian instruction, plaintiff having the burden of proof. A sole cause defense seeks to defeat plaintiff's claim of actionable negligence by, in addition to exonerating defendant of all concurring negligence, establishing the cause as the sole act of another than defendant. So long as a defendant's acts may constitute concurring negligence in a humanitarian submission, a converse humanitarian instruction submits the defense. Notwithstanding a sole cause defense may be shown under a general denial, Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 857 [3, 11], "there must be facts in evidence which will sustain a sole cause defense before a defendant may properly have a sole cause instruction." Bunch v. Mueller, supra, 284 S.W.2d loc. cit. 444 [8–10] and cases cited; Watts v. Moussette, 337 Mo. 533, 85 S.W.2d 487, 491 [6, 7]; Stanich v. Western U. Tel. Co., 348 Mo. 188, 153 S.W.2d 54; Crews v. Kansas City Pub. Serv. Co., 341 Mo. 1090, 111 S.W.2d 54, 59 [7]. "If his, the defendant's evidence, completely exonerates him of fault and is susceptible of an hypothesization demonstrating that the plaintiff's injuries were not due to the defendant's acts or conduct but were wholly and alone due to the negligent acts or conduct of some third person or of the plaintiff himself he is entitled to an instruction submitting those facts to the jury as his theory of the case and the reason he should be exonerated." Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289, 291.

In Semar v. Kelly, supra, plaintiff predicated a verdict on a finding that defendant was negligent in driving on the wrong side of the street. Defendant adduced evidence that Williams, the driver of the car in which plaintiff was a guest, came over the crest of a hill in the middle of the street at an excessive rate of speed and, without varying his course, collided with defendant's car, and that defendant at all times was on his side of the street and swerved to the right but was unable to avoid the Williams' car. Defendant submitted a sole cause instruction predicating a defendant's verdict upon a finding of negligence in the excessiveness of the speed of the Williams' car. We held the instruction erroneous, stating, 176 S.W.2d loc.cit. 293: "His [defendant's] testimony was that he was never on the wrong side of the street. Furthermore, he said that Williams suddenly appeared over the hill at an excessive speed, in the middle of the street, without ever varying his course. It takes these additional facts and circumstances, in this case, to make it appear that Williams' negligence alone caused the collision." See also Fassi v. Schuler, 349 Mo. 160, 159 S.W.2d 774, 777.

In the instant case the testimony is that defendant did not sound his horn. There is no testimony that he did. " 'The humanitarian doctrine calls into action *every* means at hand to prevent the threatened injury.' " Wofford v. St. Louis Pub. Serv. Co., Mo., 252 S.W.2d 529, 531 [2]; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S.W.2d 809 [2]. One must act on reasonable appearances at a time when action would be effective to be free of negligence under the humanitarian doctrine. Womack v. Missouri P. R. Co., 337 Mo. 1160, 88 S.W.2d 368, 371, citing cases. After the instant defendant saw plaintiff, plaintiff traveled at least 46 feet and there was testimony by defendant that plaintiff traveled from 50 to 65 feet. Plaintiff was an adult, an experienced driver, and needed only a few feet to escape. We are not willing to hold under the facts favorable to defendant that a timely warning could not

have been given for plaintiff to have accelerated her speed or to have stopped and avoid the collision. Bunch v. Mueller, supra; Wofford v. St. Louis Pub. Serv. Co., supra, among others. In the circumstances there was no sufficient showing of facts upon which to base a sole cause submission.

The facts distinguish the instant case from defendant's cases. In Vietmeier v. Voss, Mo., 246 S.W.2d 785, 790, a five year old boy, chasing a ball, ran suddenly into the street and into the side of defendant's car, and we consider that, in view of the short time available and plaintiff's age, it was speculative to say a warning would have been effective. In Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 463, and Johnson v. Dawidoff, 352 Mo. 343, 177 S.W.2d 467, 468, pedestrians emerged suddenly from behind some obstruction to the view and ran or walked fast in front of or into the side of defendant's automobile in circumstances under which defendant could not avoid the pedestrian under the humanitarian doctrine.

We need not consider the other attacks against the instruction.

Defendant, pointing out that the verdict of the jury was in favor of defendant and against plaintiff on both plaintiff's cause of action and defendant's counterclaim, argues that the verdict shows the error was harmless, stressing Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372, 375 [3], and Banks v. Koogler, Mo., 291 S.W.2d 883, 890. The Brewer case is distinguishable in that it involved a claim and a counterclaim based on primary negligence; and the finding for plaintiff on his claim and against defendant on his counterclaim as submitted under Instruction No. 1 therein (submitting several grounds of negligence in the conjunctive) established that defendant's contributory negligence barred a recovery on his counterclaim. Nor is Banks v. Koogler controlling here. Each case involved a claimed error in an instruction. Neither involved a verdict directing instruction not supported by substantial evi-

dence. A plaintiff's contributory negligence is not a defense to his humanitarian case; and a humanitarian submission is generally postulated on the fact plaintiff was contributorily negligent. Defendant's position would authorize a sole cause submission whether or not the defendant's evidence absolved him of concurrent negligence. We have to indulge in speculation to say defendant's sole cause instruction had no effect upon the jury, and are on safer ground in holding that such verdict directing instructions should be supported by evidence.

■ Defendant's instruction No. 1 did not direct a verdict. It informed the jury that it is the duty of the "driver of *every* automobile on the streets" (emphasis supplied) to exercise the highest degree of care in the operation of such automobile, and that the failure to so exercise the highest degree of care "is negligence as that term is used in these instructions."

■ "It has been repeatedly held that instructions merely stating abstract principles of law should not be given. Such instructions merely tend to confuse and mislead the jury. No one can know how a jury would apply said abstract propositions of law to the case at hand." Schipper v. Brashear Truck Co., Mo., 132 S.W. 2d 993, 995 [3, 4], 125 A.L.R. 674; Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, 63; Humphreys v. Chicago, M., St. P. & P. R. Co., Mo.App., 83 S.W.2d 586, 589 [6, 7]. Consult Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 532 [6–8]. Under plaintiff's humanitarian submission the jury was concerned with defendant's duty and not with plaintiff's duty in driving her car, as plaintiff's failure to exercise the highest degree of care would not defeat a plaintiff's verdict. McCall v. Thompson, 348 Mo. 795, 155 S.W.2d 161, 167 [9]; Largo v. Bonadonna, Mo., 269 S.W.2d 879, 884 [4]. We hold this abstract statement of the law should not be given in the event of another trial, and it is not necessary to determine whether it constituted reversible error upon a consideration of the other instructions.

■ Defendant's instruction on damages was general in nature with respect to the damages to his automobile. As held in Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, 910 [23, 24], the proper measure of damages to personal property is the difference between the reasonable market value before and after injury, and the proper rule for determining such damages should be given to the jury. A remittitur was required for failure to so instruct in the Brunk case. The instruction should be redrafted.

■ Plaintiff objected to the admission of certain evidence on behalf of defendant on the ground the question called for a conclusion. Plaintiff, abandoning the ground presented in the trial court, makes the point here that the testimony was hearsay. The point is not open for consideration on review. Teel v. May Department Stores Co., 352 Mo. 127, 176 S.W.2d 440, 446 [12]; Scott v. Missouri P. R. Co., 333 Mo. 374, 62 S.W.2d 834, 839 [14]; City of St. Louis v. St. Louis, I. M. & S. R. Co., 248 Mo. 10, 25, 154 S.W. 55, 60 [7, 8]. We need not develop another similar instance calling for a like ruling.

■ There was evidence indicating defendant received a back injury while in the Army and after the collision, informing the Veterans Hospital he was in an accident while in the Army, defendant had an operation on his back. The following occurred: "Q. Now, in so far as your back condition is concerned, you don't really know what caused your back condition; do you? A. All I know is that, after the accident, it was bothering me more and more. Q. But I say: You personally don't know, or you never did know what caused your back condition?" The court sustained defendant's objection and plaintiff claims reversible error. We dispose of the point with the observation that a wide latitude should be allowed in the cross-examination of a party to an action Hoffman v. Illinois T. R. Co., Mo.App., 274 S.W.2d 591, 594 [5]; but defendant's an-

swer to the previous question appears to have covered the question asked. The trial court is vested with a proper discretion in limiting the cross-examination of a party. Gardner v. St. Louis Union Trust Co., Mo., 85 S.W.2d 86, 90.

The judgment is reversed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

EAGER, P. J., STORCKMAN, J., and STONE, Special Judge, concur. LEEDY, J., not sitting.