Peggy SPERRY, Respondent,

v.

TRACY DODGE–PLYMOUTH COMPANY, a Corporation, and Millard W. DeShon, Appellants.

No. 48193.

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

W. J. Sherwood and W. H. Utz, Jr., of Smith, Sherwood, Utz & Litvak, St. Joseph, for appellants.

C. C. Ross, Bethany, and Ralph R. Hulse of Mitchell & Hulse, St. Joseph, for respondent.

COIL, Commissioner.

A jury awarded Peggy Sperry $25,000 as damages in her action against Tracy Dodge-Plymouth Corporation and Millard DeShon for alleged injuries she sustained as a result of having been struck by an automobile owned by Tracy Dodge and operated by its salesman, DeShon. Both defendants appealed from the ensuing judgment and both contend that plaintiff failed to make a submissible case, that the court erred in giving instructions and in refusing to discharge the jury for improper argument by plaintiff's counsel, and Tracy Dodge contends also that the evidence failed to show that DeShon was on its business at the time of the accident. Plaintiff's case was submitted on these disjunctively stated assignments of negligence under the humanitarian doctrine, failure to stop or slacken or warn.

In determining whether there was substantial evidence to support the three hypotheses that after plaintiff came into a position of imminent peril defendant De-Shon in the exercise of the highest degree of care could have stopped the car or slackened its speed or warned the plaintiff of its approach and thus and thereby have avoided striking her, we review the evidence from a standpoint favorable to plaintiff, give her the benefit of any part of defendants' evidence favorable to her and not contradicted by her own testimony or not contrary to her fundamental recovery theory, give her the benefit of the reasonable inferences from all the evidence, and disregard all of defendants' evidence unfavorable to plaintiff. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50 [1, 2]; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 37 [2].

The evidence so reviewed justifies this statement. About 3:30 in the afternoon of May 1, 1957, plaintiff and another young lady were passengers in an automobile being operated by their friend, Donna Warford, northeastwardly on Frederick Avenue in St. Joseph. The three were leaving the city after having attended the Apple Blossom Festival. Donna stopped her automobile at the curb, intending that plaintiff would cross the street and purchase some doughnuts. While crossing to the doughnut shop, plaintiff was struck by the Tracy automobile being driven by De-Shon southwest on Frederick.

Frederick Avenue is 42 feet wide from curb to curb. Automobiles are permitted to park in the respective curb lanes and, at the time of the casualty in question, those lanes were partially occupied by parked cars so that there were, regularly and at the time of the accident, one eastbound and one westbound lane for vehicular traffic. While, as indicated, Frederick ran northeast-southwest, for the purposes of this case we shall hereinafter refer to it as though it were an east-west street.

When the eastbound Warford car reached the place in the 1800 block of Frederick opposite the doughnut shop, Donna pulled to the south curb and stopped with her car's front end 114 feet west of the west curb of 19th Street, the first intersecting southbound street to the east. Plaintiff alighted, went to the rear of the automobile, and stood at the curb. The Warford car had been stopped so that it blocked a driveway and, apparently for that reason and while plaintiff remained standing at the south curb, the car was driven forward in the south curb lane some 100 feet until it had reached a place where its front end was about 15 feet west of the west curb line of southbound 19th Street. While the Warford car was thus moving eastwardly and after it had moved about 45 feet, plaintiff started across the street under these circumstances. A line of traffic had been moving eastwardly. The driver of the automobile which had been the first car behind the Warford car, saw plaintiff standing at the south curb, stopped his automobile and motioned her to cross in front of his automobile. His stopped car, of course, caused all eastbound cars behind his automobile to stop. The eastbound cars which had preceded the Warford car had, in the meantime, moved eastwardly and out of the vicinity in question.

Before plaintiff moved from the south curb, she looked to the east and saw no approaching traffic. She could see to the east as far as northbound 19th Street (there was a jog in 19th where it crossed Frederick so that northbound 19th was farther east than southbound 19th.) Northbound 19th was, according to the testimony and the pictorial evidence, a distance of at least 300 feet (undoubtedly more) east of the point of impact. She then looked to the west and upon seeing the stopped car and the driver motion her on, started across the street at a fast walk (a "little above average"), not again looking to her right. She continued at the same pace and when she had reached a point about two feet north of the center of the street, she was

struck on her right side by the left front of the Tracy Dodge automobile being operated by DeShon. (Hereinafter we shall refer to the defendant corporation's automobile as DeShon's.) DeShon had turned right onto Frederick from (northbound) 19th. He did not see plaintiff until an instant before impact.

The operator of an automobile proceeding west on Frederick under the conditions as they were at the time in question could have seen plaintiff continuously from the time she left the curb until she was struck, from the time he was 225 feet east of the point of impact. DeShon's speed was 25 miles per hour immediately before he braked prior to striking plaintiff. The day was bright and clear. The street was dry and level. DeShon's rear tires left skidmarks extending eastwardly for 20 feet from the rear wheels after the automobile had been stopped. DeShon's automobile was new and its brakes and tires were in good condition. DeShon stopped his car in a distance of 20-35 feet from the time he applied the brakes.

We are of the opinion that the foregoing evidence was sufficient to present a jury question as to each submitted hypothesis, failure to stop, to slacken, or to warn.

Defendants contend that plaintiff was not in imminent peril until she reached a place just short of the path of DeShon's car. That contention is, of course, based upon the premise that there was no evidence from which the jury reasonably could have found that plaintiff was oblivious or that DeShon had actual or constructive knowledge thereof at any time prior to the point where plaintiff could not thereafter stop before stepping into the path of his car. As we see it, however, there was substantial evidence from which the jury reasonably could have found that plaintiff's zone of imminent peril was widened by reason of her obliviousness which should have been apparent to DeShon.

The evidence heretofore reviewed showed that plaintiff actually was oblivi-

ous of the approach of defendant's automobile until the time she was struck thereby; that before plaintiff left her stationary position at the south curb she looked to the east, saw no traffic approaching, then looked to the west and saw a line of traffic stopped and saw the occupant of the first car in that line motion her across; that she proceeded across the street at a fast walk and did not again look to the east. Reasonable findings which the jury was entitled to make based on the foregoing are that from the time plaintiff left the south curb until she was struck she proceeded at a fast walk in a straight line at a steady gait, looking either directly forward or to the west. The evidence showed further that all eastbound traffic was stationary. And the record is replete with testimony as well as pictorial evidence that DeShon, in the exercise of the highest degree of care, could have seen plaintiff at the time she was standing at the south curb and from the time she left that curb, continuously until the time she was struck.

There is no doubt that it was for the jury to say whether, under the noted circumstances, DeShon, in the exercise of the highest degree of care, should have known when plaintiff reached some point in her approach to the car's path that she was oblivious of his approaching vehicle and was intent upon continuing into its path. McFarland v. Wildhaber, Mo., 334 S.W.2d 1, 2, 3; Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 88 S.W.2d 368, 371 [7], 372 [8, 9]; Daniels v. Smith, Mo., 323 S.W.2d 705, 706–708, 710 [5]; Williams v. Ricklemann, Mo., 292 S.W.2d 276, 281 [6, 7] [8]. And defendant DeShon had the duty to act when plaintiff was at a place during her approach to the pathway of his automobile "where or when it was or should have been reasonably apparent to defendant that plaintiff was oblivious of the approaching vehicle and was intent upon moving into its pathway." Silver v. Westlake, Mo., 248 S.W.2d 628, 632 [1, 2].

The precise place where and the time when plaintiff came into and was in a position of imminent peril were questions for the jury to determine. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 923 [13]. Without attempting to fix the point precisely at which the jury reasonably could have found plaintiff was in imminent peril, we do know that the evidence supported a reasonable finding that plaintiff was in imminent peril when she reached a place halfway to the point at which she was struck; for by then it should have been reasonably apparent to DeShon that plaintiff was oblivious of his approaching vehicle and intent upon moving into its path. It will be recalled that Frederick Avenue was 42 feet wide. Plaintiff was struck two feet north of the street's center. Consequently, she walked 11½ feet to the halfway point. There was no testimony as to plaintiff's walking speed. Plaintiff said she proceeded at a "fast walk." One of her witnesses described her "fast walk" as a "little above average." Often heretofore we have noticed the fact that the ordinary walking speed of the average man is two to three miles per hour, or 2.9 to 4.4 feet per second. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 635 [9]. It seems reasonable to take the view that plaintiff's "fast walk" under the circumstances would not exceed the top usual walking speed of the average man, viz., 4.4 feet per second. Thus, it took plaintiff about 2.6 seconds to cover the remaining 11½ feet from the halfway place to the point of impact. There was testimony by the driver of a following vehicle that the speed of defendant's automobile was 25 miles per hour. So the evidence supported a finding that at the time plaintiff was in imminent peril and when DeShon should have known thereof, his automobile, traveling at 25 miles per hour, was about 2.6 seconds or about 95 feet east of the point of impact. DeShon stopped his automobile in a distance of 20 to 35 feet. Adding the distance traveled during three fourths of a second reaction time, the jury reasonably could have found that DeShon, in the exercise of the highest degree of care, could have stopped in a dis-

tance, including reaction time, of 48 to 63 feet; that he had 95 feet in which to do so; and, therefore, that he could have avoided striking plaintiff by stopping his car.

It needs no demonstration to support the further proposition that if, as we have held, DeShon, in the exercise of the highest degree of care, could have stopped his car before striking plaintiff, he, under the circumstances, could have slackened its speed sufficiently to have enabled plaintiff to have safely cleared its path. Peterson v. Tiona, Mo., 292 S.W.2d 581, 584.

It seems apparent also that, under the circumstances heretofore described, it was for the jury to determine whether a timely warning by DeShon would have caused plaintiff to have stopped short of the path of his car. That is because the jury reasonably could have found that DeShon, in the exercise of the highest degree of care, could have sounded his horn when he was at least 67 feet away from the impact point and when plaintiff was still more than eight feet and almost two seconds from that point; that plaintiff could have heard the sound and could have reacted thereto in less than one second and, thus, in time thereafter to have stopped short of the car's path. See Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529, 531 [1–3]; Williams v. Ricklemann, supra, 292 S.W.2d 281 [9]; Hendershot v. Minich, Mo., 297 S.W.2d 403, 408.

■ The corporate defendant contends that the trial court erred in refusing to direct a verdict for it at the close of all the evidence for the asserted reason that the evidence failed to show "DeShon was on the business of his employer * * * at the time of the accident."

Mr. James R. Tracy, president of defendant corporation at the time of the accident, testified that DeShon was employed by Tracy Dodge as a salesman and as sales manager in Tracy's absence; that DeShon was on duty on May 1, 1957; that the car he was driving at accident time was owned by the corporate defendant; that he gave his salesmen considerable freedom in their employment to go anywhere they chose as long as they were trying to sell automobiles; that DeShon drove the car on the day in question with Mr. Tracy's consent and permission; that the acts of salesmen in stopping by their homes "is within the realm of their employment," and that taking people downtown or from downtown to their homes or anything that would promote sales are things done by his company's salesmen with his permission and are within the realm of their employment.

Defendant DeShon testified that on the day of the accident he was at the Tracy Dodge place of business and, following the Apple Blossom parade, took his family and some neighbors to their adjoining homes; that he may have eaten a late lunch at home; that thereafter he started back, going south on 19th and turning west on Frederick on the way to his place of employment; that he and other salesmen were permitted by their employer to take their families and others to parades with the thought that accommodating people will interest them in buying automobiles.

Defendants' argument is that plaintiff was not on any company business when he was returning from his home to the Tracy Dodge place of business and, consequently, his employer was not liable for his negligence during that trip. The only case cited in support of defendants' contention is Kickham v. Carter, Mo., 335 S.W.2d 83, 87. In that case the question was whether a master-servant relationship existed between a company and a salesman and it was ruled that no such relation was shown. In the present case, all the evidence is that a master-servant relation existed between Tracy Dodge and DeShon; the question is whether the servant was within the scope of his employment at the time of the casualty.

In Stokes v. Four-States Broadcasters, Inc., Mo., 300 S.W.2d 426, 428 [2–4], it was

said: "No definite rule has been formulated by which it may be determined in every instance whether the driver of an automobile, in the general employment of another, was acting within the scope of his employment, and under the control of his employer, at a given time so as to render his employer liable for his negligence in driving the vehicle. That determination must necessarily depend upon the facts and circumstances of each case."

This court has held heretofore that "if the use of the car by the servant is with the master's consent, coupled with a benefit to him, the master is liable, although such use is in the immediate business or pleasure of the servant." Byrnes v. Poplar Bluff Printing Co., Mo., 74 S.W.2d 20, 24. See also 57 C.J.S. Master and Servant § 574d(2), pp. 328, 329; Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147, 150 [3, 4]; King v. Rieth, 341 Mo. 467, 108 S.W.2d 1, 2-4. We may not say that the evidence showed as a matter of law that plaintiff's trip to his home from which he was returning to the corporate defendant's place of business at the time of the accident was solely upon his own separate business or for his sole benefit. On the contrary, there was testimony by defendant DeShon and by the president of corporate defendant from which a jury reasonably could have found that DeShon's trip to his home from which he was returning to the Tracy Dodge place of business at the time of the accident was with the consent and permission of his employer and that while DeShon benefited from the trip, it also was coupled with a benefit to the company in that the trip was in pursuit of the company's long-standing custom and policy to transport people on such occasions to create good will and potential customers.

■ Defendants' contentions that plaintiff's verdict-directing instruction 1 was erroneous because each submission was not supported by the evidence have been answered by what we have said heretofore. Their further contention is that instruction 1 was erroneous because it "failed to hypothesize facts necessary to properly guide the jury in finding * * * when imminent peril of plaintiff arose." The portion of instruction 1 which hypothesized plaintiff's position of imminent peril was, "and if you further find that defendant DeShon saw, or by the exercise of the highest degree of care, could have seen plaintiff Sperry in a position of imminent peril and danger of being struck and injured by defendants' automobile, and find that defendant in time thereafter," etc. Defendants' supporting argument is to the effect that the instruction as drawn gave the jury a "roving commission" to find that plaintiff was in imminent peril when she had first alighted from the automobile or when she was standing in the driveway.

As we have heretofore pointed out, the precise time when the plaintiff came into and was in a position of imminent peril was for the jury to determine, Perkins v. Terminal R. Ass'n of St. Louis, supra, and it is not necessary or proper that the court instruct the jury as to when a plaintiff comes into a position of imminent peril. Welch v. McNeely, Mo., 269 S.W.2d 871, 876 [8-13]. The instruction required the jury to find that plaintiff was "in a position of imminent peril" and "that was the ultimate or issuable fact for the jury to determine." Perkins v. Terminal R. Ass'n of St. Louis, supra, 102 S.W.2d 921 [11]; Welch v. McNeely, supra. It is true that neither plaintiff nor defendant offered an instruction defining imminent peril. But it has been held that the words "imminent peril" are ordinary English words which require no definition. Perkins v. Terminal R. Ass'n of St. Louis, supra, 102 S.W.2d 921 [11]; Welch v. McNeely, supra. If the defendants were fearful that the instructions were lacking in clarity or definiteness by reason of the failure of the instructions to have defined imminent peril or by reason of the failure of instruction 1 to have indicated to the jury a place or time prior to which plaintiff as a matter of law could not have been in imminent peril, it was defendants'

privilege to have submitted instructions clarifying and making those matters definite. Hayes v. Coca-Cola Bottling Co., Mo., 269 S.W.2d 639, 640 [4].

Defendants rely on Ornder v. Childers, Mo., 327 S.W.2d 913, 916, 917. That case dealt with a factual situation wholly unlike the present one. There, two vehicles were traveling westwardly in separate lanes of the same highway, plaintiff in the north lane and defendant in the south. As long as they so proceeded, no imminent peril existed. The court pointed out that plaintiff could not have been in a position of imminent peril until he began to turn left across the path of defendant's overtaking automobile. Plaintiff submitted his case by an instruction which was in part, and as plaintiff "approached the intersection mentioned in evidence, he came into and was in a position of imminent peril of collision with the automobile being operated by defendant Childers * * *." The court correctly held that the instruction did not accurately submit the fact situation shown by the evidence in that case and was therefore misleading. But the Ornder case is not authority for the proposition that it is necessary for a humanitarian instruction to require a finding as to where a position of imminent peril begins or to direct that a particular plaintiff's position of peril did not begin until she was in a certain distance from the point of collision. Perkins v. Terminal R. Ass'n of St. Louis, supra, 102 S.W.2d 923 [13]; Harrington v. Thompson, Mo., 243 S.W.2d 519, 524–529.

Instruction 1 in the present case was not erroneous for the reason ascribed. We call attention, however, to the fact that the instruction did not require a finding that defendant failed to warn, or slacken sufficiently, or stop.

■ Defendants contend that the trial court erred in giving instruction 4. That instruction was:

"The Court instructs the jury that the terms 'negligence' or 'negligently' as used in these instructions and applied to defendant do not necessarily imply any conscious or intentional wrongdoing, but simply means the failure of one to exercise that degree of care and reasonable foresight for the safety of other persons imposed upon him by law under the particular circumstances involved, and in this connection you are instructed that pedestrians and persons on foot have equal rights with vehicles and automobiles to be upon and to use the public streets and the law imposes upon persons operating motor vehicles on public streets a duty to drive the same in a careful and prudent manner and to exercise the highest degree of care so as not to endanger a life or limb of another.

"The exercise of such degree of care requires the operators of motor vehicles to maintain a constant lookout or viligance (sic) at all time(s) while their motor vehicles are in motion to see and discover other persons upon such streets who may be imperiled by the motion of such vehicle and to avoid colliding or injuring such person. The failure to exercise such degree of care to discover persons so imperiled or to avoid injuring them is negligence as that term is used herein and applied to the defendants."

We are of the view that defendants' contention that instruction 4 improperly injected or was likely to have been understood by the jury as injecting primary negligence into this humanitarian negligence case, must be sustained. Instruction 4 defined negligence and stated the duty of operators of motor vehicles to exercise the highest degree of care to maintain a lookout, without any clear reference to or any explained connection with plaintiff's duties as set forth in her verdict-directing instruction 1. Instruction 4 then informed the jury that a failure to exercise the highest degree of care to discover persons imperiled or to avoid injuring them was negligence, again without any reference to or clearly stated connection between that direction and any matter contained in verdict-directing instruction 1. Plaintiff's instruction 1 did not

mention "negligence" or "negligent," and, of course, as a humanitarian submission must do, limited DeShon's duty to act to the time after plaintiff was in a position of imminent peril. It seems readily apparent that instruction 4 does not limit the jury's consideration and application of the matters and directions contained therein to the time after plaintiff was in a position of imminent peril but, on the contrary, the instruction is so worded as to make it likely that the jury would understand that it could consider and find that defendant was proximately negligent in operating his automobile prior to the time his duty to act arose under the humanitarian doctrine. The fact that the second paragraph of the instruction refers to people who "may be imperiled" and to defendants' duty to discover those "so imperiled," even if it be said, under the most favorable view of that language, that those "imperiled" refers to those in imminent peril as hypothesized in instruction 1, does not limit the jury's consideration and application of the matters stated in the instruction as a whole to the time after plaintiff was in imminent peril.

Instructions similar to instruction 4 often have been held erroneous. Some of the cases so ruling as to instructions similar in substance to present instruction 4 are: Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6; Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364, 365; Barnes v. Jones, Mo., 306 S.W.2d 512, 515 [2], and Downing v. Dixon, Mo., 313 S.W.2d 644, 648 [1].

We call attention to the fact that instruction 3 in the present case is also subject to the same condemnation as is instruction 4. Furthermore, it should not be assumed that because we have held instruction 4 erroneous because given in a humanitarian case that we are thereby approving the form and language of that abstract, argumentative, lecture-type instruction for use in a primary negligence case.

Inasmuch as this case must be reversed and remanded for error in giving instruction 4, it is unnecessary to consider defendants' contentions with respect to portions of plaintiff's counsel's jury argument.

The judgment is reversed and the case is remanded for a new trial.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.